[Philadelphia, February 9, 1835.]

, SCHIEFFELIN *against* KESSLER.

| 5r | 115 |
| 37SC | 69 |

**IN ERROR.**

Testatrix bequeathed a fourth of the residue of her estate to the defendant, in trust to appropriate, apply and dispose of the same in such way and manner and for such uses and purposes as her daughter *H.,* notwithstanding her coverture, by writing under her hand, attested by two or more subscribing witnesses, might direct, limit or appoint, and to and for no other use, intent or purpose whatever.

*H.* died during the life of the testatrix, leaving children surving her of whom the plaintiff was one.

*Held,* That the legacy would have vested absolutely in *H.* upon the death of the testatrix had she survived her; and that its lapsing was prevented by operation of the act of 19th March, 1810, and the plaintiff entitled to recover his share in severalty.

This was a writ of error to the District Court for the city and county of Philadelphia.

The case was this.

*Mary Kessler* executed and published on the 24th of November 1815, her last will and testament, which, after several specific bequests, contained the following residuary bequest:—

" And all the rest, residue and remainder of all my estate whatsoever and wheresoever, I give and bequeath the equal fourth part thereof to my son *John Kessler,* his heirs, executors and administra-

tors. One other equal fourth part thereof to my said daughter *Rachel Carboret Du Plaine,* her heirs, executors and administrators ; one other equal fourth part thereof *to* my said daughter *Elizabeth Leclerc* her heirs, executors, and administrators; and the remaining equal fourth part thereof, I give and bequeath unto my said son *John Kessler,* his heirs, executors and administrators in trust, that he or they do and shall appropriate, apply and dispose of the same in such way and manner, and for such uses, intents and purposes as my daughter *Hannah,* notwithstanding, her coverture, by any writing under her hand, attested by two or more subscribing witnesses shall or may direct, limit or appoint, and to and for no other use, intent or purpose whatsoever. And I do hereby nominate and appoint my said son *John Kessler,* executor of this my last will and testament.

"Lastly, I do hereby revoke all wills and testaments by me at any time heretofore made and published ; and declare this only to be and contain my last will and testament."

At the time of the execution of this will, the testatrix had living four children ; *Hannah,* one of them, intermarried with *Thomas Schieffelin,* and died on the 24th January 1822, intestate, without making a will or other writing in the nature of an appointment directing the appropriation of the estate devised by *Mary Kessler ;* and at her death left a husband and seven children, of whom the plaintiff is one, all of which children are living.

The testatrix, *Mary Kessler,* died the 24th November 1825 ; and *Thomas Schieffelin,* the husband of *Hannah* and father of the plaintiff, died since the institution of this suit.

Previous to the institution of the suit the plaintiff demanded of the defendant the plaintiff's share or seventh part of the estate devised to defendant in trust, and offered a refunding bond agreeably to the directions of the act of assembly.

The case was submitted without argument.

KENNEDY, J. delivered the opinion of the court, as follows:—

The first question which presents itself is, what interest would *Hannah,* the daughter of the testatrix, have taken under the will had she survived the testatrix.

The bequest, giving rise to this question, is in the following words. " And the remaining equal fourth part thereof (meaning the residue of her estate) I give and bequeath unto my said son *John Kessler,* his heirs, executors and administrators, *in trust* that he or they do and shall *appropriate, apply* and *dispose* of the same in such way and manner and for such uses, intents and purposes as my said *daughter Hannah,* notwithstanding her coverture, by writing under her hand, attested by two or more subscribing witnesses, *shall* or *may direct, limit* or *appoint,* and to and for *no other use, intent* or

(Schieffelin *v.* Kessler.)

*purpose whatsoever.*" In wills no precise form of words is necessary in order to pass either real or personal estate; it is sufficient if the words used indicate and convey distinctly the will and intention of the testator in regard to the disposition which he wishes to have made of his estate after his death.   Hence a devise in these words, " I give my land to *J. S.* to give, sell or do therewith at his pleasure," will pass a fee to the devisee in the land.   *Shep. Touch.* 439. *Co. Lit.* 9, *b.*   In *Jennar* and *Hardies*, 1 *Leon.* 283, where lands were devised to one *Edith* for life, with remainder over to *A.* in tail, and if *A.* died without issue of his body in the life of *Edith*, that then the land *should remain to the said Edith to dispose thereof at her pleasure*; and upon *A.*'s dying without issue during the life of *Edith*, it was ruled that *Edith* under the last clause took an estate in fee.   So in 3 *Leon.* 71, prior to this last case, where *A.* seized of lands in fee devised them to his wife for her life, and after her decease, *she to give them to whom she will*, it was agreed by all the court that if an estate for life had not been expressly limited to the wife, she would have taken the fee under the latter clause.   And in *Pearson* v. *Otway*, 2 *Wils.* 6, under a devise of land to one *for life* and after to her issue, but if she should have no issue, then to *have power to dispose thereof at her will and pleasure*, it was said by the court, that had she had no issue afterwards, she would have taken a fee.   In *Robinson* v. *Dusgale*, 2 *Vern.* 181, *A.* devised his land to *B.* in fee, paying four hundred pounds, *whereof two hundred pounds to be at the disposal of his wife by her will to whom she should think fit to give the same.*   The wife died intestate, and the two hundred pounds were held to be an absolute vested legacy in the wife, and that her administrator was entitled to recover it.   And in *Tomlinson* v. *Dighton*, 1 *P. Wms.* 171, PARKER, Chief Justice, lays down the distinction between a power given with a particular description and limitation of the estate (as in that case for life) and where generally; that in the former case, the power is a distinct gift and comes in by way of addition, but in the latter, the whole right of property, as it is to be disposed of, must be considered to be vested in those who are to dispose of it: and accordingly in *Maskelyne* v. *Maskelyne*, *Amb.* 750, a bequest of three hundred pounds *to A. to dispose of by will* was held to vest an absolute interest in *A.* and to entitle him to the three hundred pounds.   So in a late case, *Hixon* v. *Oliver*, 13 *Ves.* 108, a bequest being made in the following terms, " To my dearly beloved wife the sum of three hundred pounds to be disposed of as she thinks proper, to be paid after her death," it was adjudged to be an absolute vested legacy, and she having died without disposing of it, that her administrator was entitled to receive it.   It seems to me to be impossible to distinguish these cases in principle from the one under consideration.   The circumstance of the bequest being given to the plaintiff in error in trust, cannot alter the character of it in the least, as regards its being an absolute vested legacy,

(Schieffelin *v.* Kessler.)

because it is given to him expressly for the use of *Hannah* without any limitation as to interest, but accompanied by an absolute power given to her without the control of any one to dispose of it to whomsoever she pleased.   The plaintiff in error was interposed as a trustee merely on account of the coverture of *Hannah*, and for the purpose of giving to her full and absolute power over the subject of the bequest, free from all interference and control on the part of her husband : in short, to make her as completely the owner of it and to place it as much at her disposal as if she had been a *feme sole.*

Independent however of all these authorities showing it to be an absolute and vested interest, I think it perfectly clear from the tenor of the will that the testatrix intended it to be so.   It is manifest that she did not mean to die intestate as to any part of her estate, and if she has not given the fourth of the residue thereof in question to *Hannah,* she has certainly given it to no other by her will.   And again in the immediately preceding clauses disposing of the other three-fourths of the residuum among her other three children, it is clear beyond the possibility of doubt, that she has given a fourth thereof to each of them absolutely, and then comes the clause containing the bequest in question, which is general too, and without any restriction or limitation whatever of the interest intended to be given ; so that taking the whole together, I cannot conceive how it is possible for any one to doubt that she intended to distribute her estate equally among her four children, and to give to each the full and absolute benefit of his or her equal proportion of it.

Having now shown, not only from authority but likewise from the intention of the testatrix as manifested by the will itself, that the legacy in question would have vested absolutely in *Hannah* upon the death of the testatrix, had she survived, the next question presenting itself is, did the legacy lapse by the death of *Hannah* during the lifetime of the testatrix, or has the lapse of it been prevented by the operation of the act of assembly of the 19th of March, 1810. *Purd .Dig.* 566.   By this act it is declared, that " no devise or legacy in favour of a child or other lineal descendant of any testator, shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favour of such surviving issue."  · Now *Hannah,* the legatee, being the child of the testatrix, and having left issue four children, of whom the plaintiff below is one, that survived the testatrix, brings this case expressly within the provision of the act, and gives the issue or children a title to the bequest.   The only remaining question that possibly could be raised is, whether the legacy upon the death of the testatrix was transmitted by law to the issue of *Hannah* jointly, or to them severally to be divided and paid in equal portions.   The act of assembly referred to contains no specific direction on this point; but I see no good reason, why the rule prescribed by the act of

(Scheiffelin *v.* Kessler.)

'assembly, for making distribution of intestates' estates among their lineal descendants should not be adopted: this will give to each of the children of *Hannah* an equal fourth part of the bequest in severalty, and exclude all ground in any event for setting up claims on the principle of the right of survivorship which is not much favoured in law.

The judgment of the court below is affirmed.