Heirs of Wood vs. Nicholls.

---

### No. 7795.

### HEIRS OF WOOD vs. JOSEPH NICHOLLS.

The nullity of purchases by administrators of successions, of the property thereof, though absolute in one sense, may be ratified by the parties in interest. 33 An. 598.

The receipt of the price of sale by the heirs would be a sufficient ratification, if made with knowledge of the facts from which the nullity resulted.

The Defendant, urging that Plaintiffs cannot assail the legality of the sale because they have ratified it, should have specially pleaded the estoppel and cannot set it up under the general issue. Such defense is analogous to that of payment, release, novation, etc. and must be specially pleaded.

In a suit by the heirs for the recovery of property thus bought by the administrator, the tender of the price of sale is not necessary as a condition precedent. All that equity requires in such case, is to permit the defendant administrator to claim the amount in reconvention.

The plea of the necessity of tender of the price of sale should be set up *in limine* or, at least, specially.

The defendant administrator in such case is, in the sense of the law, a possessor in bad faith and, as such, bound to the restitution of fruits and revenues.

On the other hand, he is entitled to reimbursement of necessary expenses for the preservation of the property, under Article 2314, C. C., and to proper compensation for constructions and improvements, under Article 508, C. C. There is no reason to say that this article does not apply to possessors in bad faith.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J.

### *Wade R. Young* for Plaintiff and Appellant:

An administrator cannot, either by himself or by a third person interposed, purchase the property of the succession which he is administering.

Such a purchaser is in bad faith, and is not entitled to either fruits or compensation for improvements.

Where the possessor is in bad faith no offer of restitution is required.

### *E. H. Farrar* and *L. V. Reeves* for Defendants and Appellees:

First—A purchase made by a third person at a probate sale with the intention of selling to the administrator, said intention having been formed, and said purchase made without any previous or contemporaneous contract, agreement or understanding between the parties, and without any knowledge or solicitation as to the intention on the part of the administrator, and, after the adjudication to the third person, a subsequent sale by him to the administrator of the same property, do not bring the case within the provisions of Art. 1146 C. C. In such a case the third person is not a person interposed.

Second—In the nature of things there must be some previous or contemporaneous *aggregatio mentium* between the interposer and the interposed person. If the latter acts upon his own volition, without being moved thereto by another, he cannot be said to be an interposed person as to that other.

Third—A purchase of property by an administrator at probate sale, who is incompetent to buy under Art. 1146 C. C., is one of those absolute nullities established in the interest of individuals which may be ratified by the parties in interest, expressly or impliedly. C. C. Art. 11; Cod. lib. II, t 3, l 29; Scott vs. Gorton, 14 L. 122; Vaughan vs. Christine, 3 An. 328; Toullier, vol. 7, Nos. 561, 562, and vol. 8, Nos. 515 and 517.

Fourth—The distribution among, and receipt in writing by, the heirs of their virile portion of the proceeds of such a sale, is a ratification of the sale, and an estoppel against them from contesting the same, unless the ratification was made in ignorance of all the facts, or brought about by the fraud, concealment or deceit of the administrator. Collins vs. Moore, 16 L. 75; Bornet vs. Davis, 1 An. 329; Headen vs. Oubre, 2 An. 142; Sittig vs. Morgan, 5 An. 574; Coleman vs. Dewees, 3 An. 698; Gerard vs. Hirsch, 6 An. 651; Williams vs. Springfield, 15 An. 535; D. lib. XXVII, t 9, l 10, where Ulpian decides that the accounting and payment to a minor after majority, by his tutor, of the proceeds of the sale of realty made by the tutor in complete violation of law, is a ratification by the minor, and an estoppel to the recovery of the estate. Michaud vs. Girod, 4 H. 503.

Fifth—Where heirs bring an action to set aside such a sale, and aver that they have received and receipted for their virile portions of the proceeds of the same, but aver that these receipts were given in ignorance on their part of the facts charged, and that knowledge of the same had but lately come to them, it is incumbent upon them to administer affirmative proof of ignorance and of error.

Sixth—Where no such affirmative proof is administered, and no attempt made to adduce such proof, and no cause or excuse assigned for this fatal omission, and where the defendant administers affirmative proof of the receipt of the proceeds and the ratification of his acts, the judgment will not be one of nonsuit, but definitive against the plaintiffs. Dupre vs. Richard, 11 R. 495.

Seventh—In no event could a recovery be had by the heirs in such a suit without a tender to

the purchaser of the amount bid by him at the sale, with legal interest from the date of payment. Such a tender was the condition precedent of recovering. 21 An. 385, 425; 23 An. 354, 487; 24 An. 537; 28 An. 269.

Eighth—Nothing could have relieved the plaintiffs of the necessity of this tender but the allegation and the proof that the defendant, over and above any claim he might have for necessary improvements, repairs and expenditures, would be indebted to them for revenue in excess of the amount they were bound to tender. 13 An. 189; 14 An. 597.

Ninth—The rights of the possessor in bad faith are governed by Arts. 508 and 2314 of the Civil Code, and under the provisions of those articles, he is entitled to all necessary expenditures for the preservation of the property, such as taxes and necessary repairs (6 An. 356; 24 An. 253; 99 U. S. 513); and, in case the evictor elects to take the "plantations, constructions and works" made by him on the realty, he is entitled to reimbursement for the value of the materials and of the price of workmanship employed in making said works. 26 An. p. 588; 99 U. S. p. 513.

Tenth—To this rule there is an exception of doubtful authority established by the case in 12 An. 545, where the improvement made by the possessor in bad faith is inseparably connected with the soil itself. Demolombe, vol. IX, sec. 689.

Eleventh—In addition to the reasons assigned in No. 6 why the judgment against the plaintiffs should be definitive and not one of nonsuit, there are two others:

(a) This is an action of revendication, in which plaintiffs must make out their title affirmatively or have their demand rejected. Young vs. Chamberlain, 15 An. p, 454.

(b) Plaintiffs are striving de lucro captando, and having ignominously failed to make out their demand, should not be allowed another opportunity to vex the defendant. Their cause is one against which the courts will lean. 11 L. 445; 1 R. p. 23.

*Thomas J. Semmes* on same side.

The opinion of the Court was delivered by

FENNER, J. Plaintiffs are four of six forced heirs of their deceased mother, Mrs. Laura Wood, and they bring this suit to recover from the defendant their four-sixths interest, as such heirs, in a certain plantation situated in the parish of Tensas, which, they allege, is unlawfully held by said defendant under an adjudication made in reality to him, while he was administrator of the succession of their deceased mother, at a sale provoked by himself, in said succession, of said property belonging to said succession, in contravention of the prohibition contained in article 1146 of the Civil Code. The petition contains various other charges against the conduct of defendant in his administration of the succession, which we do not find it necessary to consider, because we think the matters referred to are either closed by the homologation of his accounts, or, even if open, are not sustained by sufficient proof.

The salient question of fact in the case is whether or not the defendant did purchase the property in contestation, "by himself or by means of a third person," while he was administrator of the succession to which it belonged and in which it was sold.

If he did, such purchase was in direct violation of the prohibition contained in article 1146, C. C., and is absolutely null and void. It is not denied that he was administrator of the succession, that the property

belonged to the succession, and was sold under order of the probate court rendered on his own petition as administrator. It was adjudicated to one Wade Harrison, who subsequently made title to defendant, and it is averred that Harrison was a party interposed by defendant, and that the latter was the real purchaser.

It is clearly established that Harrison was the brother-in-law of defendant; that he lived in Mississippi; that he came to the parish of Tensas about the time of the sale; that he and Nicholls were present together at the sale; that, on the day of sale, viz: May 8th, 1869, defendant gave him a full receipt for the purchase price; that, although the title was made to him, he did not pay the price, but that the same was assumed and accounted for as cash by defendant; that Harrison left immediately for home, and the plantation remained in the possession and under the control of defendant; that defendant then proceeded to close up the succession, file and homologate his accounts, and settle with the heirs; and that, some months after the receipts of the heirs had been obtained, Harrison, on the 26th of December, 1870, reconveyed the place to defendant for the pretended price of three thousand dollars, recited in the deed to have been paid and delivered, in cash, in the presence of the officer and subscribing witnesses, although it is admitted that no such payment was really made.

The mere recital of these undisputed facts produces a powerful impression on the mind that defendant was the real actor in the purchase and Harrison merely his representative. They evince a studious disguise and concealment of the real transaction, which suggest an ulterior motive for covering up the truth. How did it happen that Harrison, a resident of another State, chanced to turn up in Tensas just at the date of the sale? Why did he purchase the plantation? Why did he immediately turn over his bargain to Nicholls without profit? Why the fictitious receipt for the price? Why the false title to him? Why did he leave without re-transfer to Nicholls? Why the long delay until some months after defendant had wound up the succession and obtained the final receipts of the heirs? Why the circumstantial, and yet false, recital in the reconveyance to the effect that the consideration was the price of $3000, presently paid in cash in the presence of the officer and of the subscribing witnesses? These queries inevitably suggest themselves and require clear and satisfactory answers. The evidence, far from furnishing such answers, adds force to the suspiciousness of the proceeding.

A. Y. Wood testifies that he had a conversation with Harrison during the past year, in which the latter stated that " he had come to purchase this property at the request of Joseph Nicholls, and for the use of Joseph Nicholls."

Neither defendant nor Harrison contradicts the truth of this statement.

Harrison, after stating that after the adjudication was made to him Nicholls came to him and proposed to take the purchase off of his hands and that he consented, is driven to admit: first, that he bid in the property with the intention of selling to Nicholls, and finally, that "he bid the value of the property *for the use of the defendant*, because he thought it was for the interest of defendant and the heirs." It is noteworthy that Harrison was made the witness of plaintiffs, and that counsel for defendant did not cross-examine him.

The testimony of defendant himself is vague and inconclusive. He does say that "the purchase of the plantation was not made by virtue of any *agreement* or *compact* between me and Mr. Harrison;" and he says that it was after the sale that he agreed to take the purchase off of Harrison's hands. But he does not negative the idea that there may have been an *understanding* between them before the sale. He does not pretend to explain any of the suspicious circumstances. On cross-examination, he says: "*I don't know* that any one requested Harrison to purchase this property. *I don't know* that there had been any conversations between us as to the purchase of the place. There may have been."

From the whole evidence, we can reach no other conclusion than that announced by the judge *a quo*, that it establishes "the fact that Harrison was a party interposed and purchased for the defendant, then the administrator, and the sale was, therefore, under the law, null and void.

## II.

It is contended, however, that the nullity here set up, though absolute, is one established in the interest of individuals, and may be ratified by the parties in interest. This is no doubt true, subject to certain limitations which do not affect the present case.

C. C. 11; Scott vs. Gorton, 14 La. 122–3; 7 Toullier, Nos. 558, 561.

It is next said that the receipt by these heirs of their virile shares of the proceeds of this sale operates a ratification of the sale and an estoppel against their contesting its validity, unless the ratification was made in ignorance of the facts from which the nullity results. The authorities quoted by defendant's counsel sustain this proposition. But we think the ratification relied on cannot avail defendant here, for two reasons, viz:

1st. The estoppel should have been specially pleaded and cannot be set up under the general issue.

It is manifestly a means of defense, analogous to payment, release,

novation, etc., going to show the extinction of an obligation proved to have once existed, and must, therefore, be pleaded specially.

6 L. 457; 9 L. 111; 17 L. 82, 259, 371; 19 La. 542; 5 R. 486; 9 R. 256; 6 An. 778.

We cannot concede the proposition contended for by defendant's counsel, that the mere allegation in plaintiffs' petition, that they had received the proceeds of sale in ignorance of the fact which created its nullity, dispensed the defendant from pleading this special defense.

This allegation was mere surplusage, not essential to their recovery, and not necessary to be proved under the general issue. The general denial only puts at issue the facts necessary to plaintiffs' recovery.

19 L. 366; 5 R. 117; 10 R. 453; 13 An. 375.

The allegations of the petition on this point amount merely to a denial that they had ratified, and are not different in effect from an allegation in a petition of debt, that it had never been paid. Would it be claimed that such allegation would dispense a defendant from pleading payment?

2d. The foregoing objection is, however, of little consequence in this case, because the evidence satisfies us that the plaintiffs were, and must have been, ignorant of the fact that defendant was the purchaser. How could they have known this fact? Nicholls does not pretend to have informed them of it. The bid was made by Harrison. The receipt for the price was given to Harrison. The title was made to Harrison. The property was kept in Harrison's name until after the whole transaction was consummated and the receipts of the heirs obtained. Even when the reconveyance was made to defendant, care was taken to hide all connexion with the original transaction by falsely reciting a different price and its actual payment in cash in presence of the officer and witnesses. In view of these painstaking efforts to conceal the fact of the purchase having been made by defendant, and in absence of any circumstance even suggesting any knowledge on the part of plaintiffs until the statement made to one of them just before this suit, by Harrison, it would have been superfluous to administer further proof of ignorance, and was no doubt so regarded by plaintiffs' counsel.

### III.

The judge a quo gave a judgment of nonsuit against plaintiffs on the grounds that, in a legal sense, as heirs of their mother, plaintiffs must be regarded as the vendors of defendant, and that it was a necessary condition precedent to their right of action to annul the sale that they should prove a tender of the sums received by them on account of the price.

The doctrine of antecedent tender is derived from no textual pro-

vision of the law, but rests upon equitable principles, and should be controlled by equitable considerations.

It has been applied in redhibitory actions, in actions to rescind sales for breach of the resolutory condition, in actions of rescission of commutative contracts, in suits to compel conveyance where the legal title is in defendant and the equitable title in plaintiff; in suits for the enforcement of relative nullities, and in similar cases.

After a somewhat exhaustive examination, we find no instance of its application in a case like the present, where the nullity of defendant's title is absolute, resulting from the active violation of a prohibitory law made to regulate defendant's conduct in a fiduciary capacity, and where such violation was disguised and concealed from plaintiffs, who received what was paid to them in ignorance of such violation, and who only discovered the fact years after the payment. It is manifest there was never any contract of sale and defendant never had any title. Defendant's claim is not a claim for restitution of price, for there was no sale, and, therefore, no price. The title of plaintiffs has never been divested. Their right to recover the property is absolute, and not dependent upon any antecedent restitution. Defendant's right to recover does not spring from any contract which is annulled, but is an equitable claim for money paid by him for the benefit of plaintiffs.

We discover no principle of equity requiring plaintiffs to tender this money to defendant before asserting their absolute title to property belonging to them and held by defendant as a mere possessor without title. All that equity could possibly require would be to permit him to set up his claim in reconvention, which would not be denied.

An additional reason for disregarding the objection of want of tender in this case, is that such plea should have been set up *in limine* or, at least, specially pleaded. We cannot recognize the right of defendant to take his chance on a trial of the merits, and when defeated, to set up a plea in abatement of this kind.

Finally, it appears from the pleadings and proofs that defendant is, in the sense of the law, a possessor in bad faith, responsible for fruits and revenues during more than ten years, and worth at least one thousand dollars a year. In asserting such a claim there was no equity nor necessity for plaintiffs to make a tender of the very much smaller amount received by them.

Robert vs. Brown, 14 An. 597.

Woods vs. Woods, 13 An. 189.

## IV.

As just stated, defendant is a possessor in bad faith and, as such, bound to the restitution of fruits and revenues. These are alleged to

have been fully worth one thousand dollars *per annum*, during the entire time of defendant's possession, and this allegation is sustained by the direct and positive testimony of two witnesses, who are entirely uncontradicted.

*Per contra*, defendant is undoubtedly entitled to necessary expenses for the preservation of the property, under article 2314 C. C., and to a proper adjustment of his claims for constructions and improvements, under article 508, C. C. We find not even plausibility in the contention of plaintiffs' counsel that this article does not refer to possessors in bad faith.

We are somewhat embarrassed by the anomalous circumstance that defendant has not, in his pleadings, asserted or prayed for judgment on such claims. This would undoubtedly be necessary under the general rules of pleading; but inasmuch as evidence was received on these points, without objection in the court below, and as justice requires an accounting in such cases, we will not debar the defendant from relief.

The evidence, however, is entirely insufficient to enable us to determine his rights under the law.

As to expenses and repairs, he is only entitled to such as were necessary for the preservation of the property, under the express terms of C. C. 2314. As to constructions and works made with his own materials, the owner would ordinarily have the option of requiring them to be demolished and removed, or of keeping them and paying to the possessor the actual present value of the materials and workmanship. In the present case, however, as plaintiffs only recover an undivided interest in the land, they are not authorized to require the removal and demolition against the will of their co-owners, and must, therefore, be confined to the last mentioned alternative.

As to improvements by their nature inseparable from the soil, such as ditching, wells, etc., he is not entitled to compensation.

See 12 An. 545; 16 An. 243; 24 An. 253; 26 An. 588; 99 U. S. 513.

In view of the insufficiency of the evidence in the present record to enable us to make an intelligent finding on these points, we will shape our decree so as to preserve the rights of parties.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs and against the defendant, recognizing and declaring the plaintiffs to be the lawful owners of four undivided sixths interest in the property described in the petition herein, and that plaintiffs have judgment against defendant for four-sixths of the rents and revenues of said property, at the rate of one thousand dollars *per annum*, from May 8th, 1869, subject to a credit of seven hundred and fifty-three 56-100 dollars (being the amounts received

by plaintiffs from defendant in settlement of their mother's succession), with legal interest thereon from July 23d, 1869.

It is further ordered that this cause be remanded to the District Court for further proceedings for the purpose of ascertaining the amount, if any, which may be due by plaintiffs to defendant for necessary expenses for the preservation of the property and for constructions and works, according to the principles settled in the foregoing opinion, said amount when so found to be offset against the foregoing judgment; and that execution of the money judgment above rendered in favor of plaintiffs be suspended until the settlement of defendant's rights and claims, as above set forth by final decree, defendant and appellee to pay costs of the lower court and of this appeal.

---

## ON APPLICATION FOR REHEARING.

TODD, J.   We have carefully re-examined our former decree in connection with the argument of defendant's counsel in this application for a rehearing, and we are unable to change or modify our conclusions as expressed therein in regard to the nullity of the sale attacked and the right of the plaintiffs to recover their interest in the property; and that no ratification of this sale, express or implied, had been made by the plaintiffs.

The sole issues strictly involved in this case, under the pleadings, were the validity of the sale and the rent of the property sought to be recovered.   The petition charged the nullity of the sale and set out the grounds thereof.   The answer was a general denial, containing no demand for the value of improvements of any kind, nor claim for reclamation on account of sums paid out for the benefit of the succession or of the plaintiffs as heirs thereto, nor any allegation that the sale in question was in any manner approved or ratified by the plaintiffs.   The reason why, under these pleadings, we allowed the offset of $753 66, mentioned in the decree, was that this amount was expressly admitted in the petition to have been paid plaintiffs by the defendant.

We remanded the case with a view to ascertain and fix the amounts to which the defendant might be entitled, under article 2314 C. C., for expenses necessarily incurred in the preservation of the property, and also to be more exactly informed respecting the value of the works and constructions made by the defendant, for which he was entitled to reimbursement under article 508 of the Code; but, by the terms of the decree, excluded from such estimation such improvements or works as by their nature were inseparable from the soil, such as ditching, wells, etc.

Considering that the accounts of the defendant as administrator

were offered and filed in evidence without objection, which it is claimed by him show the payment of the debts of the succession of plaintiffs' mother, and payments inuring to the benefit of plaintiffs as heirs thereto, and for which he should be reimbursed, and further reflection satisfying us that the end of justice and the purposes of a full, fair and equitable settlement between the parties require a full inquiry touching these alleged payments, and also in relation to the improvements, including that class of improvements excluded by our former decree, we feel constrained to modify that decree by enlarging the scope and intendment thereof. In doing so, however, we express no opinion whether any additional credits should be allowed the defendant on account of these alleged payments, nor whether he is or not entitled to reimbursement for improvements, inseparable from the soil, excluded by our previous decree; these matters remain open for future adjudication.

It is, therefore, ordered that the decree heretofore rendered remain undisturbed, except as modified by the views hereinabove expressed, and that the case be remanded with authority to the defendant to amend his answer by setting forth specifically the amounts claimed by him on account of payment of the debts of the succession; and also the amounts for which he claims reimbursement for works, constructions, and improvements made by him on the lands in controversy of every kind and description, with the right to both parties to offer evidence touching said matters of inquiry herein specified, subject to all legal objections to be determined by the judge of the first instance; and that in every other respect the said previous decree is re-affirmed.