472 So.2d 331 (1985)
V & S PLANTING COMPANY, Plaintiff-Appellee,
v.
RED RIVER WATERWAY COMMISSION, Defendant-Appellant.
No. 84-573.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
Writ Denied October 4, 1985.
*332 Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Herbert J. Mang and Peggy St. John, Alexandria, for defendant-appellant.
Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before GUIDRY, KNOLL and KING, JJ.
GUIDRY, Judge.
Plaintiff, V & S Planting Company, orally sublet certain wooded land from Ralph Haire in December of 1980. Plaintiff commenced clearing operations on the land *333 soon after. The owner of the property, The Red River Waterway Commission, evicted plaintiff from the land subsequent to plaintiff's completion of the clearing operations.
Plaintiff filed suit against the Waterway Commission seeking damages for the expenses it had incurred. In an amended petition, plaintiff alleged that it was entitled to recover expenses as a "good faith possessor". The Waterway Commission answered plaintiff's suit with a general denial and urged that plaintiff was not entitled to recover because its loss was occasioned by its own negligence.
The trial court rendered judgment in favor of plaintiff for $6180.00 finding that the Waterway Commission was unjustly enriched by the clearing operations of plaintiff. The Waterway Commission appeals the trial court's judgment urging that the doctrine of unjust enrichment is not applicable in the instant case and, in the alternative, that the damages awarded are excessive.

FACTS
On February 12, 1979, defendant, The Red River Waterway Commission, purchased from the Dunahoe family approximately 212 acres of land situated along the Red River in Natchitoches Parish. The property was acquired by defendant in connection with the Red River Waterway Project. It was the policy of defendant to allow the former owners and their lessees continued occupancy of the lands acquired until such time as the property was needed for the project. In keeping with this policy, the Dunahoes and their lessee were allowed occupancy of the land until needed by defendant.
At the time of the above described sale, the property was under lease by the Dunahoes to Mrs. Velda Haire. This particular lease had been entered into by Mrs. Haire and the Dunahoes on November 1, 1978 for a period of one year at a rental price of $1000.00 per year. The lessee was also given the option to renew the lease for one year periods for the following five years at a yearly rental price to be mutually agreed upon by the parties. The lease further provided that, in the event the land was expropriated or sold, the lease would immediately terminate with adjustments being made for rentals previously paid. The lease was not recorded.
In November, 1979, a new lease was entered into by the Dunahoes and Mrs. Haire. The lease was very similar to the previous year's lease, except for the following:
"The parties acknowledge that said premises have been expropriated by the Red River Waterway Commission but that said Waterway Commission has agreed to give Lessor sixty (60) days notice to remove any cattle or any other objects from said property prior to taking possession. Lessor and Lessee agree that if said notice is given, by the Red River Waterway Commission, that this lease shall terminate immediately and Lessee shall be entitled to a prorata refund of all rentals paid hereunder for the balance of the term of the lease but shall have no other claim against Lessor."[1]
This lease, like the first, was not recorded.
In December, 1980, Mrs. Haire's husband, Ralph Haire, orally sublet the subject property to plaintiff. The sublease was to run for a period of three years at an annual rental of $3,000.00. At the time of the sublease, the property was unsuitable for agricultural use other than grazing. The property was overgrown with briar patches, saplings, etc. In addition, a pecan tree grove on the property had been logged some years before with the tree tops left strewn over the property. In February 1981, plaintiff began clearing operations on the land in order to make it suitable for row crop farming.
Through the clearing operations, plaintiff was able to convert approximately 125 acres into row crop land. The clearing operations were completed on or about February 18, 1981.
*334 By letter dated February 27, 1981, defendant informed plaintiff that it had sixty days to vacate the property.[2] Plaintiff did so and on May 29, 1981, obtained a lease on the property from defendant after public bid. The lease was for a term of seven months at a rental price of $7,370.00. In 1982, plaintiff renewed its lease for an additional year at an annual rental of $6,250.00. In 1983, plaintiff was unsuccessful in its bid on the property and another party obtained a lease on the property for an annual rental of $8,412.22.
At trial, it was established that, as a result of the clearing operations, the rental value of the improved property increased by approximately $70.00 or $80.00 an acre. However, evidence was also adduced at trial that it was the intention of the Waterway Commission, at the time the land was purchased from the Dunahoes, to leave the property wooded for use as a wildlife refuge and primitive campsite area.

UNJUST ENRICHMENT
The theory underlying the remedy of unjust enrichment was explained by our Supreme Court in Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974):
"... This restitutionary remedy is founded upon principles of unjust enrichment embodied in Civil Code articles 21 and 1965.1 The action derives from the maxim that natural justice requires that no one should be enriched at the expense of another. It is used to fill a gap in the law where no express remedy is provided..." (footnote omitted).
The court in Edmonston, citing their previous decision in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967), set forth the following requirements that a plaintiff must meet in order to prevail in an action for unjust enrichment:
"To deter courts from turning to equity to remedy every unjust displacement of wealth with unregulated discretion, certain limitations are applicable to the actio de in rem verso. The Minyard decision set forth five prerequisites which must be satisfied to successfully invoke the action: 1) There must be an enrichment; 2) there must be an impoverishment; 3) there must be a connection between the enrichment and the impoverishment; 4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and 5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature."
Former Justice Albert Tate, Jr. (now Judge, U.S. Court of Appeals, 5th Circuit) has suggested that in practical terms, the five requisites set forth in Minyard mean that an impoverished plaintiff has a cause of action against an enriched defendant if:
"(i) the defendant receives an "enrichment" (an economic benefit received by his estate, whether by an addition to it or by a prevention of an economic detriment to it, without his furnishing compensation intended to be adequate for it);
(ii) the plaintiff has sustained an "impoverishment" (an economic detriment suffered by the plaintiff's estate, whether because of the loss of a previously acquired asset or because of the prevention of justified expectation of gain);
(iii) the enrichment and the impoverishment are connected (the economic benefit to the one patrimony results from the economic detriment to the other, either by direct transfer or indirectly through an intervening party, without any corresponding transfer of compensation intended to be adequate);
(iv) no legal cause justifies the enrichment (in the sense that no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment); and
(v) no other legal remedy is practically available to the impoverished plaintiff by *335 which the impoverishment might be or might reasonably have been avoided (this is the principle of "subsidiarity" by which the extraordinary remedy of unjustified enrichment, not provided by the Civil Code, is regarded as unavailable where another legal remedy could have prevented the impoverishment)."
Justice Tate,

The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883 (1976) and 51 Tul.L.Rev. 446 (1977).
In the instant case, the trial court found that plaintiff had presented sufficient evidence to satisfy the requirements set forth in Minyard and thus was entitled to recovery under the theory of unjust enrichment.
After carefully reviewing the record, in light of the criteria announced in Minyard, we conclude that the trial court erred in finding that plaintiff was entitled to recovery on the basis of unjust enrichment.
Arguably, the first three requisites of Minyard were met by plaintiff in this case. We say arguably because we have some doubt as to whether or not defendant was enriched. According to the record, defendant intended to use the property as a wildlife refuge and primitive campsite area. Obviously, after completion of the clearing operations, the land was not suitable for defendant's intended use. The trial court found that defendant was enriched, in that, defendant was able to collect $22,032.22 in agricultural lease money as a result of plaintiff's clearing the land. In rejecting defendant's argument that it was not enriched, the lower court stated:
"The primary argument made by the Red River Waterway Commission was to the effect that this area which was cleared was designated as a wilderness area and therefore the plaintiffs had actually done damage to the waterway commission by clearing a `wilderness area'. This is a very ingenuious argument by astute counsel but this was not a wilderness area; it was an old field which was overgrown by thorn bushes and from which all the pecan trees had been cut for logs a few years earlier and was littered and strewn with tree tops. If this field were left uncultivated for three or four years, it would return to the same condition it was in at the time it was cleared by these plaintiffs."
Admittedly, defendant took advantage of the improved condition of the land by leasing it for agricultural purposes and deriving an economic benefit therefrom. However, this does not detract from the fact that defendant intended to use the property as a wildlife refuge and primitive campsite area. Surely, the clearing operations did not enrich defendant in this regard. Nevertheless, for purposes of this opinion, we will assume that the defendant was enriched.
We entertain serious doubt that the plaintiff in the instant case can satisfy the fourth requirement of Minyard. The lease by the Dunahoe family to Haire, as well as the sublease by Haire to plaintiff were never recorded. Under the public records doctrine, defendant's acquisition of the land in question was not subject to any rights acquired by virtue of these transactions. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). Therefore, under the analysis of Judge Tate, there would be a legal justification for the impoverishment, as the public records doctrine would bar plaintiff's right to its application. In any event, we are satisfied that plaintiff is not entitled to invoke the actio de in rem verso because he has an adequate remedy at law.
Plaintiff could have proceeded against his sub-lessor for breach of warranty. Under the verbal lease agreement, the lease was to be for a term of three years. Plaintiff cleared the land in reliance upon the sub-lessor's representation that the lease would remain in effect for three years. While plaintiff did not expect the sub-lessor to pay for the clearing work, plaintiff did expect to recoup these expenses by being able to farm the property for the three year term. Had the sub-lessor warned plaintiff that the property had been purchased by defendant and that defendant could take possession at any time upon sixty days notice, undoubtedly, plaintiff *336 would not have undertaken the expensive task of clearing the property. Hence, we conclude that plaintiff has an adequate remedy at law against its sub-lessor under the sub-lessee's warranty of peaceful possession.
Plaintiff argues, on appeal, that the requirement of lack of any other remedy at law is not that plaintiff have recourse against a third party not involved in the suit for unjust enrichment, but that the law provides plaintiff no other basis for recovery against this defendant. Plaintiff cites Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743 (La.App. 1st Cir.1977), as authority for its position.
We have examined the Acme decision and are not convinced that it necessarily stands for the position advanced by plaintiff. In Acme, the plaintiff brought suit based on unjust enrichment against the defendants to recover property taxes paid pursuant to an erroneous tax assessment. The Acme court was called upon to interpret the fifth criteria set forth in Minyard. The court stated:
"The fifth limitation is designed to prevent a plaintiff from resorting to the equitable remedy de in rem verso when another remedy, expressly provided by law, is available against the defendant. The issue is whether or not these plaintiffs had an available remedy at law against these particular defendants."
However, the court added the following in a footnote:
"We note that plaintiffs had a legal right to seek reimbursement from the taxing authority for the taxes paid pursuant to the erroneous assessment. This right had prescribed prior to the institution of the present suit. Accordingly plaintiffs only means of recovering the erroneous tax payments was through an action for unjust enrichment against these defendants."
The plaintiff in Acme could not resort to an action against the taxing authority for it had prescribed. In the present case, plaintiff's action against the sub-lessor remains viable. We think this is an important distinction between the two cases. Perhaps, the Acme court would have ruled in the same way even if plaintiff's action against the taxing authority had not prescribed. Be that as it may, in our view, resort to the extraordinary remedy of unjust enrichment is not appropriate when the impoverished party has a legal remedy against any party to prevent the loss. To the extent that Acme, supra, may hold to the contrary, we reject its rationale and respectfully decline to follow same.
Inasmuch as the trial court based its decision on the theory of unjust enrichment, it did not consider plaintiff's alternative demand, i.e., that it was a "good faith possessor" and as such entitled to recovery from defendant for the expenses it incurred.
We have considered plaintiff's argument in this regard and ultimately conclude that no recovery or compensation can be allowed plaintiff as a possessor under the rules of accession as prescribed by our civil code. A predial lessee does not qualify as a possessor within the intendment of the accession articles of our civil code because the lessee-possessor does not possess as owner (Alexius v. Oertling, 13 Orleans Appeal 216 (La.App.Orl.Cir.1916); A. Yiannopoulos, Property, Sec. 198, in 2 Louisiana Civil Law Treatise, pg. 538-539 (2d ed. 1980); although the right of the lessee to recover for improvements and additions he has made, with the consent of the owner, is governed by C.C. Articles 493, 493.1, 493.2 and 495. See C.C. Article 2726. However, in any event, plaintiff cannot be considered a possessor in good faith for purposes of accession as it did not possess the subject land by virtue of an act translative of ownership (C.C. Article 487) and only the possessor in good faith is entitled to recover useful expenses (inseparable improvements) to the extent they have enhanced the value of the thing. La.C.C. Art. 482; Gibson v. Hutchins & Vaughn, 12 La.Ann. 545 (1857); Heirs of Wood v. Nicholls, 33 La.Ann. 744, 751 (1881); and, comments under La.C.C. Art. 497.
*337 For the above and foregoing reasons, the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed with prejudice. Plaintiff-appellee is taxed with all costs both at the trial level and on appeal.
REVERSED AND RENDERED.
NOTES
[1] In actuality, the property was sold in lieu of expropriation.
[2] The record reflects that defendant was not aware that plaintiff held a sublease of the property or that it had cleared such land until after the clearing operations were completed.