520 So.2d 1086 (1987)
Al W. BEACHAM, M.D., & Sara Young Beacham, Plaintiffs-Appellees,
v.
HARDY OUTDOOR ADVERTISING, INC., Defendant-Appellant.
No. 86-1166.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Book & Beverung, M. Steven Beverung, Lake Charles, for defendant-appellant.
Debra Jean Becnel, Lafayette, for plaintiffs-appellees.
Before DOUCET and KING, JJ., and *1087 CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
Plaintiffs instituted this proceeding on June 20, 1985, seeking an injunction prohibiting the defendant from entering upon plaintiffs' property to remove an advertising sign placed there by defendant. Plaintiffs obtained a temporary restraining order to that effect, and also sought a judgment declaring plaintiffs to be the owners of the sign. Plaintiffs later amended, seeking damages. Defendant reconvened seeking damages for wrongful issuance of the T.R.O. or, in the alternative, damages.
After a hearing on July 29, 1985 the trial court granted plaintiffs a preliminary injunction. After trial on the merits, a judgment was rendered declaring plaintiffs the owners of the sign, and awarding judgment to the plaintiffs in the amount of $500. The defendant appeals this judgment.

FACTS
The plaintiffs are co-owners of a tract of land fronting I-49 North of Lafayette, Louisiana. The defendant is an outdoor advertising company. Neil Onebane, an owner of several convenience stores, desired to advertise his business on a billboard fronting I-49. Mr. Onebane contacted Henry Hardy, the president of the defendant company, Hardy Outdoor Advertising, Inc., who agreed to erect a billboard for Mr. Onebane, provided Mr. Onebane obtain the location for the structure. In August, 1984 Mr. Onebane approached the plaintiff, Dr. Beacham, as an old family friend, and asked if he could have a sign erected on Dr. Beacham's property fronting I-49, in order to advertise his business. Dr. Beacham agreed to allow him to do so "rent-free" on the condition the sign would be removed on short notice, since the property was for sale. Dr. Beacham signed an application for a permit from the state allowing the placement of the sign on his property.
In June, 1985 R.R. Cassidy, Inc. of Baton Rouge, the subcontractor for defendant, Hardy Outdoor Advertising, commenced to erect a 14' × 48' steel and concrete based billboard on the plaintiffs' property. Upon becoming aware of the construction, Dr. Beacham notified Mr. Onebane, the only person with whom he had had contact, that he desired its removal. Mr. Onebane contacted Hardy Outdoor Advertising who in turn contacted its subcontractor, R.R. Cassidy, and requested that they stop construction. However, R.R. Cassidy was unable to reach its people working in the field in time to stop the construction before the billboard was substantially completed. When the construction was continued and the sign not removed, Dr. Beacham filed suit to be declared owner of the sign and seeking damages.
After notifying R.R. Cassidy, Inc. to cease construction, Mr. Hardy contacted Dr. Beacham at his home, and was informed by Dr. Beacham that he was going out of town and to contact him the following Monday. Mr. Hardy contacted Dr. Beacham again the following Monday. He was instructed to talk to Dr. Beacham's lawyer, who informed him that a temporary restraining order had already been issued prohibiting him from entering upon plaintiffs' property and removing the billboard. No advertising of any sort was placed on the sign.

ASSIGNMENTS OF ERROR
1. The trial court erred in finding the sign is an immovable under LSA-C.C. art. 463 and LSA-C.C. art. 493.
2. The trial court erred in holding the plaintiffs own the sign.
3. The trial court erred in holding the defendant is not entitled to reimbursement for the sign and damages.
4. The trial court erred in awarding damages to the plaintiffs.

ISSUE 1
The law is settled that a sign embedded in the ground with steel and cement *1088 is within the category of "other constructions" in LSA-C.C. art. 463, thus an immovable by nature. LSA-C.C. art. 463 Comment C (1978); American Sign and Indicator Corp. v. City of Lake Charles, 320 So.2d 234 (La.App. 3d Cir.1975); Industrial Outdoor Displays v. Reuter, 162 So.2d 160 (La.App. 4th Cir.1964), writ refused, 246 La. 348, 164 So.2d 352 (1964). Therefore the trial court did not err in finding the sign is an immovable.

ISSUE 2
The defendant claims the trial court erred in holding the plaintiffs own the sign.
The plaintiffs agreed to let an old family friend place a sign on their property "rent-free." There is no lease involved, since a certain and determinate price is essential to a lease. LSA-C.C. art. 2670 and LSA-C.C. art. 2671; McCain v. McCain Bros., 165 La. 884, 116 So. 221 (La.1928); Mouton v. P.A.B., Inc., 450 So.2d 410 (La.App. 3d Cir.1984), writ denied, 458 So.2d 118 (La. 1984). Since there is no lessor-lessee relationship, we must turn to the articles on accession to determine the rights of the parties. Myers v. Burke, 189 So. 482 (La. App. 1st Cir.1939). Therefore, the issue of ownership turns on whether the plaintiffs, as the owners of the land, consented to the construction of the sign on their land.
LSA-C.C. art. 493 provides in pertinent part:
"Art. 493. Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
"When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner."
Also applicable are:
"Art. 493.1. Things incorporated in or attached to an immovable so as to become its component parts under Articles 465 and 466 belong to the owner of the immovable."
"Art. 493.2. One who has lost the ownership of a thing to the owner of an immovable may have a claim against him or against a third person in accordance with the following provisions."
The plaintiffs apparently intended the sign to be such as they had previously permitted friends to erectsmall and nonpermanent. The sign the defendant erected is a permanent, double-sided billboard, on which the defendant planned to advertise not only the friend's business, but a motel as well. The permit for the sign (for which the plaintiff signed the application) states that an $11,000 sign would be erected. The defendant now contends that he actually constructed a $27,050.23 sign. Clearly, the sign constructed on the plaintiffs' premises is not the type of sign they consented to, nor did the defendant plan to use it only for the purpose the plaintiffs consented to. Under the facts of this case, the plaintiffs did not consent to a sign of this nature being placed on their premises.
Since the sign was not erected with the plaintiffs' consent, it belongs to the plaintiffs as the owners of the ground, under LSA-C.C. art. 493.

ISSUE 3
The defendant claims entitlement to reimbursement for the value of the sign and damages.
The defendant is clearly not entitled to reimbursement under the rules of accession, LSA-C.C. art. 496 and art. 497,[1] since *1089 it never possessed the land. Under LSA-C. C. art. 3424, one acquires possession by taking corporeal possession, with the intent to possess the thing as owner. No intent of the defendant to possess the land as owner has been shown. Without the requisite intent to own, the defendant cannot be a possessor under the rules of accession, and so it is not entitled to compensation under LSA-C.C. art. 496 or LSA-C.C. art. 497. V & S Planting Co. v. Red River Waterway Comm'n., 472 So.2d 331 (La. App. 3d Cir.1985), writ denied, 475 So.2d 1106 (La.1985); Falgoust v. Inness, 163 So. 429 (La.App.Orl.Cir.1935).
The trial court found the defendant not entitled to reimbursement under the theory of unjust enrichment because "a provision of law, LSA-C.C. art. 493, intends to make the landowner the owner of the structure subject to no reimbursement." However, the intent of the legislature in enacting LSA-C.C. art. 493.2 is clearly expressed in 1979 La. Acts 180, at 433:
"Things incorporated in, or attached to, an immovable so as to become its component parts under Articles 465 and 466 belong to the owner of the immovable, whether made with or without his consent. But one who lost the ownership of a thing to the owner of an immovable under this provision may have a claim against him or against a third person in accordance with Articles 494 through 498. These provisions are based on considerations of equity and fairness to all concerned. They may be regarded in part as applications of the principle that forbids unjust enrichment." (Emphasis added)
Although the precise situation of the parties herein is not provided for in LSA-C.C. art. 493 through LSA-C.C. art. 498, we believe the legislature intended to prevent unjust enrichment in all situations. This interpretation is supported by the fact that LSA-C.C. art. 497 prohibits unjust enrichment even where constructions have been made on the property of another by a bad faith possessor. Also, LSA-C.C. art. 21 mandates a decision according to equity where positive law is silent.[2] Here, the defendant has not gone so far as to try to usurp ownership of the property, so the defendant should not, logically, suffer a greater penalty than a bad faith possessor would under C.C. art. 497.
The prerequisites to a suit under a theory of unjust enrichment were set forth in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1968):
"There are now five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature. 36 Tul.L.Rev. 605, 610."
This court recently discussed these requirements in V & S Planting Co. v. Red River Waterway Com'n, 472 So.2d 331 (La.App. 3d Cir.1985), writ denied, 475 So.2d 1106 (La.1985):
"Former Justice Albert Tate, Jr. (now Judge, U.S. Court of Appeals, 5th Circuit) has suggested that in practical terms, the five requisites set forth in Minyard mean that an impoverished *1090 plaintiff has a cause of action against an enriched defendant if:
"`(i) the defendant receives an "enrichment" (an economic benefit received by his estate, whether by an addition to it or by a prevention of an economic detriment to it, without his furnishing compensation intended to be adequate for it);
"(ii) the plaintiff has sustained an "impoverishment" (an economic detriment suffered by the plaintiff's estate, whether because of the loss of a previously acquired asset or because of the prevention of justified expectation of gain);
"(iii) the enrichment and the impoverishment are connected (the economic benefit to the one patrimony results from the economic detriment to the other, either by direct transfer or indirectly through an intervening party, without any corresponding transfer of compensation intended to be adequate);
"(iv) no legal cause justifies the enrichment (in the sense that no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment); and
"(v) no other legal remedy is practically available to the impoverished plaintiff by which the impoverishment might be or might reasonably have been avoided (this is the principle of "subsidiarity" by which the extraordinary remedy of unjustified enrichment, not provided by the Civil Code, is regarded as unavailable where another legal remedy could have prevented the impoverishment).'
Justice Tate,

The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883 (1976) and 51 Tul.L.Rev. 446 (1977)."
We find the defendant has fulfilled the requisites for an action in unjust enrichment. The plaintiffs have been enriched by the acquisition of a $27,050.23 sign. Although evidence was presented at trial that the actual value of the property was depreciated by the addition of the sign, evidence was also presented as to the removability of the sign. The sign, including its concrete foundations, apparently can be removed in one working day, and the property restored to its former condition. Thus, the plaintiffs have acquired a sign which can be removed with relative ease and sold or placed elsewhere for rental. The plaintiffs have been enriched.
The defendant has been impoverished by the loss to the plaintiffs of the sign it paid for. This shows a direct connection between the enrichment and the impoverishment.
As already discussed, the enrichment is unjustified because no provision of law intended to permit or bar attack on this type of enrichment and no other legal remedy has been expressly provided for the defendant in this situation. Thus the application of the theory of unjust enrichment to this defendant in this situation is suitable.
Accordingly, the equitable solution in this case is to find that plaintiffs, at their option, have thirty days from the date on which this judgment becomes final to: inform defendant in writing of their intent to retain ownership and possession of the sign and pay to defendant the costs of constructing the sign, or to demand in writing that defendant remove the sign and restore the land to its original condition within thirty days of the written demand, plaintiffs thereby releasing their right to ownership and possession of the sign. See LSA-C.C. art. 495.[3]
*1091 The values of the materials and workmanship used on the sign, as evidenced at trial, are as follows:

Keeler Iron Works (14 × 48 back to
back structure) .................................. $12,149.00
R.R. Cassidy (subcontractorfor construction
of sign) ......................................... 5,200.00
Garrett's Paints & Supplies (materials)
.................................................. 87.66
Stein Lumber Co. (materials) ..................... 386.43
Brown Building Supply (forklift rental)
.................................................. 66.26
Garrett's Paints and Supplies (materials)
.................................................. 270.62
Pat Hogan (lease manservices) ............. 500.00
Oil Center Secretarial Services (services)
.................................................. 3.62
Keeler Ironworks (V-top).......................... 8,383.00
 __________
TOTAL ............................................ $27,046.59

The defendant is not entitled to an award for lost revenues since it never had the right to use the plaintiffs' premises for its own profit. From the moment the sign was constructed on the plaintiffs' property without their consent the plaintiffs owned it and were entitled to any revenues it produced. LSA-C.C. art. 493 and LSA-C. C. arts. 482 and 483. Since the defendant would never have been entitled to any revenues produced by the sign, no revenues were lost.

ISSUE 4
The trial court did not err in awarding damages to the plaintiffs. Damages have been awarded for unconsented to activities performed on the property of another, based on physical property damage, invasion of privacy, inconvenience, and mental and physical suffering. Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (La.1955); Boswell v. Roy O. Martin Lumber Co., Inc., 355 So.2d 33 (La.App. 3d Cir.1978), writ granted, 357 So.2d 1154, reversed on other grounds, 363 So.2d 506 (La.1978). The award of $500 damages to the plaintiffs was proper.

DECREE
For the reasons assigned above, we hold that the sign is an immovable; the plaintiffs own the sign; the plaintiffs, at their option, have thirty days from the date on which this judgment becomes final to inform defendant in writing of their intent to retain ownership and possession of the sign and pay to defendant $27,046.59, or to demand in writing that defendant remove the sign and restore the land to its original condition within thirty days of the written demand; and the plaintiffs are entitled to the damages awarded by the trial court. The parties are assessed the costs of appeal equally.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[*] "Honorable William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Art. 496. Constructions by possessor in good faith

When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable.
Art. 497. Constructions by bad faith possessor
When constructions, plantings, or works are made by a bad faith possessor, the owner of the immovable may keep them or he may demand their demolition and removal at the expense of the possessor, and, in addition, damages for the injury that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separable improvements that he has kept or the enhanced value of the immovable.
[2] Art. 21. Absence of express law, court's duty to decide equitably

In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.
[3] Art. 495. Things incorporated in, or attached to, an immovable with the consent of the owner of the immovable

One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Articles 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.