HARDY, Judge.
This is an action by plaintiff for the recovery of damages alleged to have been suffered by defendant’s cutting of timber in bad faith. After trial there was judgment in favor of plaintiff in the sum of $90, from which defendant appeals. Plaintiff answers the appeal, praying an increase in the judgment to the sum of $210.
■ The facts show that by instrument dated August 29, 1949, plaintiff sold all the pine timber eight inches and up at the ground on a certain described sixty-acre tract of land to the defendant. Some months later defendant began cutting the timber and in the course of this operation cut down an undetermined number of trees under eight inches in diameter. Upon discovering the violation of the provisions of the deed on the part of defendant plaintiff immediately made demand that defendant cease cutting the undersized timber, and further, that he reimburse plaintiff for the timber wrongfully cut.
The above facts are all established without dispute, but as to the number of trees wrongfully cut by defendant .there is a conflict of testimony. Plaintiff, supported *228 by other witnesses, contends that he inspected the tract of land and marked 210 trees that were under six inches in diameter. Defendant on the other hand introduces the testimony of a witness admitted by both sides to be an expert timberman,' who testified that he found, after a careful inspection of the whole, tract, only 51 trees below six inches in diameter at the ground which had been cut during defendant’s operations.
Plaintiff claims the sum of $2-10 represented to' be the value of 210 trees, which he contends were suitable for poles, the average price being fixed at $1 per tree. Defendant on the other hand insists that the undersized trees were cut and sold for pulpwood and were not suitable for making into poles. After examination of the record we think the evidence preponderates in favor of defendant’s contention on this point.
 The question of bad faith is also involved. Defendant strenuously urges that in the negotiations prior to the execution of the deed he stipulated his interest in the purchase of all pine timber six inches or more in diameter at the ground. This is denied by plaintiff and it is true that the deed was drawn under defendant’s instruc-. tions. Although defendant asserts that he did not read the deed, nonetheless it must be construed against him. As a result it must be concluded that defendant was in legal bad faith.
We were not favored with a written opinion by the trial Judge but from the statements in brief it appears that his judgment was based upon some sort of compromise estimate on the number of trees which had been wrongfully cut. Ordinarily we would be disposed to accept the estimate, but, unfortunately, we cannot find" any ground for establishing a figure between the number of 210 fixed by plaintiff and the number of 51 asserted by defendant and corroborated by his expert witness. We think the latter estimate more nearly accurate in view'of the fact that plaintiff measured the trees ccanpréhended in his claim by the use of a rule laid across the stumps. The testimony clearly indicates that the timber of plaintiff’s tract of land was made up of swell-butted pine and it follows that there could be a material discrepancy between the diameter measurement of the stump and the measurement at the ground. Defendant’s expert,testified that he measured every stump at the ground and uppn this he based his conclusion. We think this evidence is entitled to the greater weight.
With respect to the quantum- of damages the rule is well established in this State that the measure of damages for the cutting of timber in bad faith is fixed on the basis of the value of the finished product less the cost of manufacture.
There is considerable confusion and conflict in the testimony with respect both to- the amount of pulpwood that would be yielded by 51 trees and the price thereof. On the whole, considering the testimony of all the witnesses on this point, we think that an estimate of four cords would be approximately correct. The stumpage value of pulpwood was testified variously to be from $3 to $5 per cord and the price delivered at the mill was fixed at $11 to $11.50 per cord. It is impossible to determine with any certainty the actual cost of manufacture and delivery because of the wide variance in the testimony of the witnesses on this point.
In this connection it is noted that defendant tendered upon filing his answer the sum of $34.10, representing the value of eight cords of pulpwood at $3 per cord plus 10 cents as interest, together with costs of court to the time of tender. In making the tender defendant did not admit, but specifically denied, that as. much as eight cords of pulpwood had been produced by the undersized trees which had been wrongfully cut. If we consider the tender to apply to four cords of pulpwood it would be equivalent to a price of $6 per cord, which we think fairly represents the value of'the pulpwood less the-costs of logging and delivery.
Under this view of the' controversy we are impelled to conclude that defendant’s tender reasonably approximated the' value of the damages as nearly as may be ascer *229 tained from the record. It- follows that he should' he relieved from any judgment above the amount of the tender and the co-sts accrued to the time of making said tender.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment ■ ordering the Clerk of the Eighth Judicial District Court in and for Winn Parish, Louisiana, to pay over to plaintiff, or his order, the sum of $34.10, tendered by defendant and now held in the Registry of the Court.
Plaintiff is taxed with "all costs, incurred after time of tender by defendant.
KENNON, J., not .participating.