HOOD, Judge.
Clifford Boswell claims damages allegedly sustained by him when defendant, Roy O. Martin Lumber Company, Inc., deadened some trees on Boswell’s property. The trial court rendered judgment for plaintiff. Defendant appealed.
The issues are (1) whether the timber deed which plaintiff executed in favor of defendant authorized the latter to deaden trees less than eight inches in diameter on plaintiff’s land; and (2) whether the award of damages made by the trial court is excessive.
Plaintiff owns a 50-acre tract of land in Vernon Parish. On December 14, 1962, he *35 executed a timber deed conveying to defendant all hardwood, cypress and pine trees located on that tract of land which are “. . .8 inches and larger in diameter at stump when and where cut.” The timber deed also contained the following provision:
“Vendee shall have a period of 5 years or until December 14, 1967 from the date hereof in which to cut and remove timber, trees and other forest products, and to conduct its operations hereunder, together with full right of ingress, egress and regress for all purposes pertaining to its business on said land or adjacent tracts of land. Vendee may use roads and trails existing or hereafter constructed, including bridges, and may widen, repair or rework all roads, trails, and bridges. Vendee may construct additional bridges and roads as needed, and shall have all other incidental, necessary or essential rights for the cutting, removal, manufacture, and/or storing of the aforesaid trees, timber, logs, wood or wood products. . . ”
The parties later entered into other written agreements, under the terms of which they extended the time allowed defendant for cutting and removing timber to December 14, 1977.
On or about June 25, 1974, employees of the defendant lumber company went on plaintiff’s land and performed or carried out a procedure known in the forestry industry as “Timber Stand Improvement,” or “TSI.” The TSI project consisted of injecting a chemical or herbicide into certain trees, which caused the trees so treated to be deadened or killed. The purpose of that procedure was to remove cull, trash or weed trees from the property, so that the merchantable trees would have more room to grow. The TSI project was conducted on plaintiff’s land without prior notice to Boswell of defendant’s intent to conduct it.
Plaintiff instituted this suit on May 22, 1975, contending as the basis for his claim that defendant injected and destroyed many trees which were not included in the timber sale, and that the trees so treated had present and future commercial value. An expert called by him testified that 6,220 trees were killed by defendant, the great majority of which were under 8 inches in diameter, and only about one-third of them were “weed trees.” He estimated that the trees of that size which were destroyed would have yielded about 50 cords of firewood, and that that timber when cut and delivered would have had a total retail value of about $2,500.00.
Defendant contends that the only trees below 8 inches in diameter which were destroyed were cull, trash and weed trees that had no commercial value at all, present or future. Its experts testified that from 75% to 100% of the trees injected would have been destroyed anyway in the course of conducting normal logging operations on the property, as defendant was authorized to do, that literally thousands of pine and hardwood trees less than 8 inches in diameter were left standing on the property, and that the TSI project served to greatly “enhance” the value of the land and the remaining timber on it.
Defendant argues that the killing of small cull or weed trees which have no merchantable value is an incidental and necessary right to the logging operations authorized by the timber deed, and that defendant was “expressly authorized” by that deed to conduct those operations. In that connection it points out that the timber deed gave it the right “to cut and remove timber, trees and other forest products,” and that that contract grants to it “all other incidental, necessary or essential rights for the cutting, removal and/or storing of the aforesaid trees, timber, logs, wood or wood products.”
The first question to be answered is whether defendant was authorized by the original timber deed, dated December 14, 1962, to conduct a TSI project on plaintiff’s property, which involved the injecting and killing of trees under 8 inches in diameter.
The trial judge concluded that “the timber deed did not authorize Timber Stand Improvement activities on the Boswell tract,” and he rendered judgment in favor *36 of plaintiff awarding him general damages for the unauthorized deadening or destroying of trees on his property.
As already noted, the timber deed gives defendant the “right of ingress, egress and regress for all purposes pertaining to his (its) business,” and “all other incidental, necessary or essential rights for the cutting, removal, manufacture, and/or storing of the aforesaid trees.” We find that the project conducted by defendant in June, 1974, resulting in the destruction of small trees on plaintiff’s property, was not necessary to defendant’s right of ingress and egress to and from the property, and it was not incidental, necessary or essential to the cutting and removal of the trees which were sold. The obvious purpose of the project was to improve the quality or value of the larger timber which defendant expected to cut and remove at a later date.
We think defendant had the right under the provisions of the timber deed to destroy such small trees as were necessary in connection with the cutting and removal of the timber which was sold, but it did not have the right under that contract to destroy the smaller trees solely for the purpose of increasing the value of the larger timber. We agree with the trial judge, therefore, that defendant did not have authority under the above timber deed, or by law, to .destroy trees on plaintiff’s property under 8 inches in diameter by means of the procedure known in the forestry industry as Timber Stand Improvement, that is, by injecting a chemical into specific trees under the above size for the purpose of killing or deadening them.
A person who possesses a timber cutting contract and violates it by cutting undersized timber from the property is considered to be a trespasser. Terry v. Butler, 240 La. 398, 123 So.2d 865 (1960). Applying that rule to the instant suit, we believe that defendant must be held to have been a trespasser in conducting the TSI project on plaintiff’s land, since it had no authority to deaden and destroy the undersized timber.
We agree with the trial judge that defendant committed a trespass on plaintiff’s property in conducting the above project, and that it is liable to plaintiff for the damages he sustained as a result of that trespass.
We turn now to the question of whether the award made by the trial court is excessive.
The trial judge apparently concluded that the evidence failed to establish that plaintiff had sustained any pecuniary loss as a result of the TSI project. He found, however, that plaintiff sustained “general damages” in the amount of $5,000.00 as a result of that project, and he rendered judgment in favor of plaintiff for that amount. He stated in his reasons for judgment that “actual damages are not limited to the pecuniary loss sustained,” and that he “took into consideration the amount of acres involved, the denuded condition of the land, the effect this situation has on a sole proprietor who is obviously over 50 years of age.”
In Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951), the Louisiana Supreme Court stated:
“The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. Bolles Wooden Ware Co. v. U. S., 106 U.S. 432, 1 *37 S.Ct. 398, 27 L.Ed. 230; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co., et al. [107 La. 251, 31 So. 736], supra; St. Paul v. Louisiana Cypress Lumber Co., et al., 116 La. 585, 40 So. 906; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033 and State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 and authorities therein cited.”
In the instant suit the employee of defendant who authorized the conducting of TSI operations on plaintiff’s property knew that defendant owned only the timber which was eight inches and above in diameter, and he conceded that he did not notify plaintiff of his plan to inject and destroy trees under that size before the project was started. He testified that this was the first time defendant had ever gone on a tract of land, on which it had only short term timber cutting rights as in this case, and deadened trees not included in the timber sale without the landowner’s prior consent.
We find that the trespass committed by defendant here was reckless and willful. It necessarily follows, therefore, that defendant was in moral bad faith, and that it is liable to plaintiff for the converted value of the timber less than eight inches in diameter which it destroyed, without allowance or deduction for costs and expenses, if plaintiff actually sustained any such damage. Kennedy v. Perry Timber Co., supra; Huddleston v. Knotts, 56 So.2d 227 (La.App. 2 Cir. 1951); Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197 (1952); Estate of Boyett v. L. L. Brewton Lumber Company, 223 So.2d 495 (La.App. 2 Cir. 1969); and Knoll v. Delta Development Company, 218 So.2d 109 (La. App. 3 Cir. 1969).
We conclude, as we assume the trial judge did, that the evidence fails to show that plaintiff sustained any actual pecuniary loss as a result of the TSI project which was conducted on his land.
Defendant had the right under the above timber deed to cut and remove trees which were eight inches and larger in diameter. Some of the trees which were killed in the TSI project were large hardwood trees which were included in the sale. It is immaterial whether the right granted by the timber deed included the right to inject and deaden trees that size or larger, because in any event plaintiff suffered no pecuniary loss as a result of the deadening of the timber which defendant had the right to cut and remove.
The trees less than eight inches in diameter which defendant destroyed were never converted into firewood or any other marketable product. They, in fact, were never cut down or converted into logs, so those trees never had any actual “converted value.” The evidence is conflicting as to whether any of the small trees killed by defendant could have been used for firewood or for any other purpose. Assuming, however, that some of the small trees which were injected could have been converted into firewood, we are unable to determine from the evidence how much firewood might have been produced from them, or approximately how many of those trees, or even what percentage of them, would have remained standing and available for that purpose after the larger timber was cut. It is impossible to determine from the evidence what the converted value of the injected trees might have been if an attempt had been made to utilize them for some purpose.
As already noted, the TSI project was conducted on plaintiff’s property in 1974. This suit was filed in 1975, and the case was tried on July 1, 1976. Defendant had not cut any timber on plaintiff’s land up to the date of the trial. Both parties state in their briefs filed on this appeal that defendant cut and removed all of the trees included in the timber sale some time after the trial and before the case was argued on appeal. The evidence does not show, of course, how those cutting operations affected the remaining small timber. We are unable to speculate from the facts shown in the record how many of the injected trees under eight inches in diameter would have survived the timber cutting operations which defendant was authorized to conduct on plaintiff’s property, or how much the “con *38 verted value” of those trees might have been if an attempt had been made to put them to some useful purpose.
Plaintiff argues, that the small timber which was destroyed had a “potential” market value, and that he is entitled to recover the “projected value of marketed timber based on current prices and then discounting that value to the present time.” The trial judge rejected that argument, correctly we think.
In Quatre Parish Co. v. Beauregard Parish School Board, supra, our Supreme Court held that damage to young timber resulting from the negligent cutting by a defendant who was held to be in bad faith was toó speculative to permit recovery. And, in Estate of Boyett v. L. L. Brewton Lumber Company, supra, the reviewing court held that “plaintiff’s claim for the loss of the value of the future growth of timber prematurely cut had been properly denied by the trial court.”
We, like the trial judge, find no merit to plaintiffs claim in the instant suit for the loss of the projected value of the small timber which defendant destroyed. The proof of such a loss is too speculative to permit recovery.
The evidence indicates that the value of plaintiff’s land was not adversely affected by the TSI project which was conducted on it. Plaintiff’s property is unimproved swampy land, which is not located on a public road and is relatively inaccessible. It apparently was used for no purpose other than for squirrel hunting. There is nothing in the evidence to show that the value of the property was diminished as a result of the above project. Plaintiff thus is not entitled to be compensated for damages to his property.
Plaintiff contends, finally, that he is entitled to recover damages for the invasion of his property rights, and for mental anguish, distress and humiliation resulting from the trespass on his property. In support of that demand, he testified that he frequently hunted squirrels on that property, and that defendant’s deadening of the small hardwood trees makes the property less suitable for that purpose. The trial judge obviously was impressed with plaintiff’s testimony, since he awarded plaintiff $5,000.00 as general damages resulting from the trespass.
On this appeal, which was after the larger trees had been removed pursuant to the timber deed, plaintiff argues that “the face of the land has been changed,” that “the hardwood forest existing on the land owned by the plaintiff has been destroyed,” that “for a period of time the land will be covered essentially by brush and briars,” and that plaintiff, who is an elderly man, “has suffered great mental anguish as a result of the wrongful destruction of the hardwood trees owned by him.”
We do not question plaintiff’s statements that the cutting and removal of timber pursuant to the timber deed made, or will make, his property less suitable - for squirrel hunting purposes. Plaintiff voluntarily sold his timber to defendant, however, and we assume that he knew at the time of that sale that all of the timber eight inches and larger in diameter would be cut and removed from his property. The evidence does not convince us that the deadening of the smaller trees in 1974 affected the squirrel population on that property. Even if it did, however, we feel that plaintiff must have anticipated as early as 1962, when he first sold the timber to defendant, that his hunting activities on the property would be interrupted or affected in some way by the timber cutting which he specifically authorized.
We agree with the trial court that plaintiff is entitled to recover general damages for the invasion of his property rights and for mental anguish. See Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). Considering all of the facts, however, we believe that the award of general damages made in this case is grossly excessive and must be reduced. We conclude that an award of $500.00 would be fair and adequate.
For the reasons assigned, the judgment appealed from is amended by reducing the *39 amount of the award from $5,000.00 to the sum of $500.00. In all other respects the judgment is affirmed. The costs of this appeal are assessed to defendant-appellant.
AMENDED AND AFFIRMED.