In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1242

ANTHONY ZIMMERMAN, et al.,

*Plaintiffs-Appellants*,

*v.*

JEFFREY DORAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:12-cv-50257— **Frederick J. Kapala**, *Judge.*

ARGUED SEPTEMBER 24, 2015 — DECIDED NOVEMBER 24, 2015

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Anthony Zimmerman and Premier Forest Products, Inc. ("Premier"), of which Zimmerman is president and owner, filed a complaint under 42 U.S.C. § 1983 against defendants Jeffrey Doran, Ryan Kloepping, Kenneth Sandy, and Michael Rannow, who held the positions respectively of sheriff, deputy, chief deputy, and detective of the Carroll County Sheriff's Office. The complaint alleged false

arrest in violation of the Fourth Amendment and deprivation of property without due process in violation of the Fourteenth Amendment. The parties presented the district court with cross-motions for summary judgment, and the court granted summary judgment for the defendants and denied summary judgment to the plaintiffs.

Because the parties' Rule 56.1 submission failed to succinctly identify the undisputed issues of fact, and instead included irrelevant facts and legal arguments, the district court gleaned the facts from the record as a whole. We rely on the district court's recitation of facts which are not contested by the parties on appeal.

On April 20, 2010, Premier entered into a contract with Raymond Cichon, a landowner in Carroll County, to harvest trees from Cichon's property. This agreement was the second contract between the parties for the harvesting of trees. The first was in November 2009 for the harvesting of merchantable walnut trees on Cichon's property, and was successfully concluded by the end of 2009. The April 2010 contract was titled "Timber Sale Contract and Deed to Timber," and provided that Premier "may cut and remove from [Cichon's] Lands all the timber marked or designated for removal," and further stated that Premier would "harvest all merchantable Aspen, Elm, Box Elder, Mulberry, Black Locust and all merchantable storm damaged timber including Oak, Cherry, Hickory, Ash, Walnut and Basswood." Toward that end, the contract granted Premier "access to the timber or other forest products designated in this contract." Premier recorded the contract with the county on May 26, 2010, and began its

logging operations on July 15, 2010. The project was expected to last one month but was delayed by rain.

In August 2010, the events forming the basis of this case occurred. According to Cichon, he learned at that time that Premier had been harvesting trees without regard to fence lines and thereby removing trees from the property of two of his neighbors as well as from the township's right of way. Cichon also was concerned that Premier was destroying the ground in its work because the ground was unusually wet at the time. In response to those concerns, Cichon contacted his attorney who sent a letter on August 20, 2010, to Richard C. Zimmerman (who was Zimmerman's father and the former owner of Premier) demanding that Premier "cease and desist from any further cutting of trees, removing of any wood products, further destruction of the land, and performing any other activities on the Property." Although the letter was sent to his father, Zimmerman acknowledged that he received the letter on August 24 or 25, but he disregarded it because he believed that the contract could be halted only through a court-issued temporary restraining order.

Cichon also contacted the Carroll County Sheriff's Office in an attempt to halt the logging operations on his property. On August 23, 2010, he informed the dispatcher that he had "retained a logger to do some work on [his] land" but the logger had "taken more than he was supposed to." He further advised the dispatcher that he had retained an attorney and served a "cease and desist" on the logger," and that the logger was "pulling in there right now in the darkness to load up some trees" and requested that the dispatcher send someone out to the property. Deputy Hiher, who is not a defendant in

this action, responded to the scene and had the loggers unload the logs and place them back on the property. Informed of that development by his employees, Zimmerman vowed to return to the property the next day. He texted Cichon at 3:10 a.m. on August 24, 2010, and the two exchanged texts in which Cichon told Zimmerman that a stop work order had been issued and that Premier was not to do any work on the property until the matter was resolved. Cichon also informed Zimmerman that he would call the sheriff for trespassing if Zimmerman failed to comply. Zimmerman, however, proceeded to the property with the trucks that morning and waited as the logs were loaded and transported to the mill.

At 6:59 that same morning, Cichon again sought help from the Sheriff's office and Deputy Kloepping and Chief Deputy Sandy soon arrived at the property. Zimmerman informed them that he had never been served with a cease and desist order and showed them the contract granting him the right to harvest timber on the property. Kloepping then spoke with Sheriff Doran and Carroll County State's Attorney Scott Brinkmeier on the telephone regarding how to proceed in the matter. Both Doran and Brinkmeier responded that if Cichon wanted Zimmerman to leave the property, Zimmerman had to comply and he could pursue any breach of contract claims in a civil lawsuit. Brinkmeier further declared that if the property owner wanted someone to leave his property and the person refused, that was a criminal matter and the person could be arrested for criminal trespass.

Kloepping relayed that information to Sandy, who then advised Zimmerman that he needed to exit the property because the owner did not want him there and that if he

returned he would be arrested for criminal trespass. Zimmerman agreed to leave for the day. He then investigated whether a temporary restraining order had been filed against him and discovered that nothing had been filed. In the meantime, Kloepping also inquired further into the situation, requesting a copy of the cease and desist order from Cichon, who faxed it to him. Kloepping noticed that the cease and desist order did not show service and spoke with Cichon's attorney the next day who informed him that he had not yet received a return receipt showing delivery of the cease and desist letter. Cichon's attorney also notified Kloepping that they were in the process of filing a federal lawsuit against Premier and maintained that Premier had taken numerous trees that it did not have permission to harvest and that the contract was fraudulent. Cichon's attorney further indicated that Zimmerman should be arrested if he returned to the property.

On the morning of August 25, Sandy spoke with Zimmerman and Zimmerman informed him that he was back on the property and was cutting wood. Zimmerman maintained that since there was no cease and desist order filed, he had the right to fulfill his contract and that the matter was a civil not criminal concern. Sandy alerted Zimmerman that he would be arrested for trespass if he was found on the property.

Accordingly, Deputies Sandy, Kloepping and Rannow proceeded to the property and discovered Zimmerman removing trees from the ground on Cichon's property using a "large motorized construction machine." After allowing Zimmerman to drive the machine off the property and park it, they arrested him.

Zimmerman alleges that the defendants violated his constitutional rights in arresting him for criminal trespass. The district court granted summary judgment for the defendants, concluding that the defendants possessed probable cause for the arrest and alternatively that the defendants were entitled to qualified immunity for their actions. The appellants provide only a generalized, cursory argument that the district court erred in finding qualified immunity, and as that is dispositive we confine our analysis to that issue.

We review a district court's grant of summary judgment based on qualified immunity *de novo*, accepting all facts and inferences in the light most favorable to the non-moving party. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Under the doctrine of qualified immunity, officials are shielded from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate. *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015); *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308, quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has repeatedly cautioned against defining clearly established law at a high level of generality.

*Id.*; *City and County of San Francisco, Calif. v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1775-76 (2015).

> The dispositive question is "whether the violative nature of *particular* conduct is clearly established. ... This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" ... Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts."

[citations omitted] *Mullenix*, 136 S. Ct. at 308; see also *Brosseau v. Haugen*, 543 U.S. 194, 198-200 (2004); *Sheehan*, 135 S. Ct. at 1775-76.

Zimmerman has failed to identify any factually similar case that would have alerted the defendants that they lacked probable cause to arrest him for trespass. Instead, Zimmerman relies on generalized assertions of law, arguing that it was clearly established that absent probable cause, the officers could not arrest him for trespass. The Supreme Court has consistently rejected formulations of qualified immunity in the Fourth Amendment context that are based on such generalized assertions. For instance, the Court held that the required degree of specificity was lacking where the clearly established right was defined as the "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances." *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987); *Mullenix*, 136 S. Ct. at 308-10. That formulation, rejected in *Anderson*, is materially indistinguishable from the formulation set forth by Zimmerman. It is not enough to simply assert that it was clearly established law that officers need probable cause to arrest a person. Zimmerman needed to demonstrate that it was clearly established that probable cause was lacking in the circumstances presented here.

Zimmerman provides no caselaw setting forth the relative rights of a property owner and the possessor of a timber deed. Under Illinois law, the criminal offense of trespass is committed when a person "... enters upon the land of another, after receiving, prior to entry, notice from the owner ... that the entry is forbidden" or "remains upon the land of another, after receiving notice from the owner ... to depart." 720 ILCS 5/21-3(a). It is undisputed that Zimmerman received notice to depart the property, both from the owner in the cease and desist letter and in texts, and from the officers relaying the information to him directly. He chose to remain on the property against the owner's wishes and therefore falls within the plain language of the criminal statute. Moreover, before arresting Zimmerman, the defendants attempted to sort out the relative legal rights, including contacting the state's attorney for advice as to whether the actions constituted criminal trespass. We have held that "'[c]onsulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity. Otherwise the incentive for officers to consult prosecutors—a valuable screen against false arrest—would be greatly diminished.'" *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881

(7th Cir. 2012), quoting *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004).

Zimmerman's claim that no reasonable officer could believe that there was probable cause to believe he was trespassing is based on his theory that the timber deed rendered him the "owner" of the property. He further faults the defendants for failing to read the timber deed which he asserts would have established his right to remain on the property.

Zimmerman, however, provides no caselaw that would have indicated to the defendants that a timber deed granted such rights to the recipient. The timber deed itself transfers to him only ownership of the specified timber and grants a right of access to harvest the timber. It does not provide that the right of access is unbounded and cannot be restricted in time or manner by the property owner. In addition, Cichon had informed the defendants that Premier was harvesting timber beyond that allowed in the agreement, and if the actions were outside the terms of that agreement then that agreement could not be a source of his relative rights.

Zimmerman provides only citations to two cases establishing that a possessor of a timber deed has a legal right to be on the land under the contract, *Matthews v. Brown*, 62 N.C. App. 559, 561 (1983) and *Mitchell v. Broadway*, 177 N.C. App. 430, 434-35 (2006), but that is insufficient. As an initial matter, the cases are from courts in North Carolina and do not even address Illinois law, which controls here. Under Illinois law, an individual can be guilty of criminal trespass even if the initial entry was lawful if the person refuses to leave the property after receiving notice from the owner to depart. *People*

*v. Kraft*, 660 N.E.2d 114, 117 (Ill. App. 1 Dist. 1995). Therefore, the legality of his initial entry is not dispositive. As the district court noted, Zimmerman failed to provide any caselaw establishing the legal impact of a timber deed in Illinois or indicating that Zimmerman thereby possessed an ownership interest that trumped the property owner's right to exclude others from his property, particularly where, as here, the owner had indicated that the exclusion was temporary until the situation could be worked out between them. In fact, at least in the context of civil trespass, a number of courts addressing claims that a person was harvesting timber inconsistent with the provisions of a timber deed have recognized that the person on the property pursuant to the timber deed can nevertheless commit trespass. *Dugal Logging Inc., v. Arkansas Pulpwood Co.*, 988 S.W.2d 25, 32-33 (Ark. App. Ct. 1999); *Boswell v. Roy O. Martin Lumber Co., Inc.*, 355 So.2d 33, 36 (La. App. Ct. 1978) rev'd on other grounds *Boswell v. Roy O. Martin Lumber Co., Inc.*, 363 So. 2d 506 (La. S. Ct. 1978); *Morgan v. Fuller*, 441 So.2d 290 (La. App. Ct. 1983). Because Zimmerman has not identified clearly established law that would alert the officers that a person on land pursuant to a timber deed cannot commit trespass, the district court did not err in granting summary judgment to the defendants on the ground of qualified immunity.

The district court similarly did not err in granting summary judgment to defendants on the plaintiffs' claim under the Fourteenth Amendment that the actions of the defendants shocked the conscience. In light of the repeated warnings from the officers that the property owner wanted Zimmerman to leave the property and that he would be arrested for trespass

if he refused to do so, and his ultimate decision to nevertheless remain on the property, the plaintiffs have not demonstrated that the defendants engaged in arbitrary conduct unjustifiable by any government interest. See *Remer v. Burlington Area Sch. District*, 286 F.3d 1007, 1013 (7th Cir. 2002) (recognizing that an abuse of power is arbitrary if it shocks the conscience and the plaintiff demonstrates that the official conduct is unjustifiable by any governmental interest); *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007).

The decision of the district court is AFFIRMED.