In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3044

MARCUS MUHAMMAD, et al.,

*Plaintiffs-Appellants*,

*v.*

DEL PEARSON, Police Officer #16462,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-CV-1122 — **Charles R. Norgle**, *Judge*.

ARGUED NOVEMBER 8, 2017 — DECIDED AUGUST 17, 2018

Before WOOD, *Chief Judge*, and FLAUM and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. When Officer Del Pearson and other Chicago police officers executed a search warrant for "apartment 1" at a Chicago address, there was a problem with the warrant. Apartment 1 did not exist. The building contained an apartment 1A and an apartment 1B. Pearson and the other officers actually searched apartment 1A. They did not find the drugs and related items they were seeking.

The occupants of apartment 1A then filed this suit against Officer Pearson under 42 U.S.C. § 1983 for violating their Fourth Amendment rights through unlawful entry and false arrest. Both sides moved for summary judgment. The district court denied plaintiffs' motion and granted Pearson's. We affirm the judgment but on narrow grounds. Law enforcement officers who discover that a search warrant does not clearly specify the premises to be searched must ordinarily stop and clear up the ambiguity before they conduct or continue the search. See *Maryland v. Garrison*, 480 U.S. 79, 86 (1987); *United States v. Kelly*, 772 F.3d 1072, 1083 (7th Cir. 2014). If they do not, they may lose the legal protection the warrant provides for an invasion of privacy and accompanying restraints on liberty.

As we explain below, however, we conclude that summary judgment for the officer was appropriate here. Defendant Pearson testified that he did not know there were two apartments, including an apartment 1B, and he has offered undisputed, reliable, and contemporaneous documents confirming his after-the-fact testimony that the address searched was in fact the correct target of the search authorized by the ambiguous warrant. Summary judgment on the unlawful entry claims was correct. Also, Officer Pearson had arguable probable cause to arrest plaintiff Muhammad for suspected drug trafficking, though Pearson quickly confirmed that Muhammad was not the right suspect and released him within fifteen minutes. Summary judgment based on qualified immunity was also correct on that unlawful arrest claim.

I. *Factual and Procedural Background*

Our account of the facts applies the summary judgment standard, relying on facts that are not genuinely disputed but

giving plaintiffs, as the non-moving parties, the benefit of conflicts in the evidence and reasonable inferences from the evidence. *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015), citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).

Pearson applied for the warrant based on a tip from a known and previously reliable informant. The affidavit for the warrant included the following information. In the three months leading up to the tip, Pearson's source had provided information leading to three felony arrests and seizures of illegal drugs. The source told Pearson that she bought drugs from a man named "Moe Moe" at "3236 E. 92nd St Apt#1." She described Moe Moe as a black male who was 25 to 30 years old, approximately 5'8" tall and medium build. Pearson checked Chicago Police Department databases and discovered that a man named Jamison Carr "used the address of 3236 E. 92nd St. on a previous arrest." The affidavit did not indicate which apartment number was associated with that arrest record. The source identified a photograph of Carr as "Moe Moe."

The affidavit also provided details about the transaction. It said that the source met with Carr in apartment 1. He led her into a back bedroom where she saw a "large frame semi-auto blue steel handgun" on the table and purchased "four small knotted baggies of crack cocaine." The affidavit also stated that Officer Pearson and the source "personally drove by the 3200 block of E. 92nd St" and that the source "pointed to the apartment at 3236 E 92nd St. and identified it as the apartment where [she] met the individual Jamison Carr a/k/a 'Moe Moe' and purchased the crack cocaine and observed the above handgun."

Based on that affidavit, a state court judge issued a search warrant—which Pearson also drafted—for "Jamison Carr, a/k/a 'Moe Moe', a male black, 28 yoa, 5'08" tall, 140 lbs, medium build, black hair,IR#1300675" and for premises described as "a multi-unit building located at 3236 E. 92nd St. Apt#1, Chicago, Illinois Cook County." The search warrant authorized the seizure of weapons, cocaine, drug paraphernalia, money and drug transaction records, and proof of residency as evidence of the crimes of unlawful use of a weapon by a felon and drug possession.

In his deposition, Officer Pearson provided more detail about his investigation leading up to the warrant. He compiled an array of photographs from police databases of people associated with the 92nd Street address and showed them to the source. (The photo array is not in the record. Pearson testified he kept the file at his home and "probably" threw it away.) The source identified Jamison Carr as "Moe Moe." She also identified Tracy Jones from a photograph and said Jones lived in the target apartment with her pregnant daughter and her daughter's boyfriend, who sold crack cocaine from their bedroom, where there was a gun.

Turning to the contemporaneous documents indicating that apartment 1A was the correct, intended target of the search authorized by the warrant, Officer Pearson testified that before he drafted the warrant affidavit, he ran the license plate on Tracy Jones's car through the LEADS database. He learned that the car was registered to Tracy Jones in apartment 1A. The report linking Jones's car to apartment 1A is dated March 21, 2011—the day before the warrant was issued and executed and, according to the affidavit, the same day as Pearson's meeting with the source. Pearson also filled out a

"deconfliction submission." (Chicago police officers use this document and procedure before executing search warrants to ensure that other local or federal law-enforcement agencies are not investigating the same address.) The deconfliction submission is dated March 22, 2011, the date the warrant was executed. It lists apartment 1A as the residential address of Jamison Carr as the "target." When Pearson executed the warrant, he had both the LEADS report for Jones's car and the deconfliction submission with him.

A team of fourteen Chicago police officers executed the search warrant late in the evening of March 22, 2011. They pounded on the rear door of apartment 1A, said they were the police, but received no response. Pearson was with a group of officers who used a battering ram to try to break down the rear door of apartment 1A. Another group of officers was stationed at the front door.

Inside apartment 1A, the officers found plaintiff Marcus Muhammad in the bedroom with plaintiff Micheala Jones, who was pregnant. The officers did not find a gun and did not find any drugs. The officers reported that they found ammunition in the bedroom, but plaintiffs submitted affidavits stating that they did not own, possess, or have any knowledge of the ammunition. Plaintiffs claim the officers planted it.

Officer Pearson noticed that Muhammad did not look like the picture of Jamison Carr but testified that he "wasn't sure." Muhammad denied that his nickname was Moe Moe, but he did not have any identification showing his correct name or address (and that he was not Carr). Muhammad was seven years younger and three inches shorter than Carr. Pearson arrested Muhammad and took him to the station but released

him after about 15 minutes, once he confirmed that Muhammad was not Carr. That arrest is the basis of Muhammad's false arrest claim.

The district court granted summary judgment for Officer Pearson on all claims. It held that Pearson was entitled to qualified immunity on the unlawful entry claims because plaintiffs failed to show a violation of clearly established law. The court granted summary judgment for Pearson on Muhammad's false arrest claim, finding that Pearson had probable cause to arrest him for possessing ammunition without a firearm owner's identification card. The district court dismissed the other plaintiffs' false arrest claims because they had failed to show that officers detained them beyond what was permissible in executing the warrant.

II. *Analysis*

For civil damages claims under 42 U.S.C. § 1983 for violations of constitutional rights, the doctrine of qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*, quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To overcome a defendant's invocation of qualified immunity, a plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017), quoting

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). We have discretion to decide which element of the qualified immunity defense to address first. *Pearson*, 555 U.S. at 236. If the answer to either question is no, the defendant official is entitled to qualified immunity. *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014). We address first the plaintiffs' claims for unlawful entry and then their claims for false arrest.

A. *Unlawful Entry Claims*

Under the Fourth Amendment, a search warrant must "particularly describ[e] the place to be searched." Failure to do so renders the warrant a "general warrant," which the amendment clearly forbids. See *Payton v. New York*, 445 U.S. 573, 584 n.21 (1980) (tracing roots of particularity requirement to colonists' objections to writs of assistance). The particularity requirement is satisfied if "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

In this case, a judge found probable cause to search the apartment where the informant told Officer Pearson she had bought cocaine from "Moe Moe," who had a gun at the time. The problem is that the warrant authorized a search of "apartment 1," while the actual building had an apartment 1A and an apartment 1B, but no apartment 1.

Warrants with similar errors or ambiguities are not new. When the police go forward with a search without checking back with the issuing judge, litigation is likely. Sometimes there is just a mistake in the papers. In other cases, officers seeking search warrants cannot obtain accurate information (especially about the interiors of multi-unit buildings), at least

not without alerting the targets of the investigation. See, e.g., *Maryland v. Garrison*, 480 U.S. 79, 80 (1987) (warrant was for "third floor apartment" but third floor had two apartments); *United States v. McMillian*, 786 F.3d 630, 634 (7th Cir. 2015) (typographical error in warrant and affidavit where target street address for search was "6333" but detective typed "6633"); *United States v. Kelly*, 772 F.3d 1072, 1076 (7th Cir. 2014) (warrant for "upper apartment" but building did not have upper and lower apartments and was instead "bisected into front and rear multi-story units"). And sometimes information is lost in communications between two police officers. E.g., *Jones v. Wilhelm*, 425 F.3d 455, 459 (7th Cir. 2005) (one officer obtained warrant for "upstairs apartment on the right," but executing officer realized that phrase described two apartments because building had two staircases on opposite sides of building).

Officers executing warrants like these may violate the Fourth Amendment if they know or should know, before execution, that the warrant has an error or critical ambiguity that risks a search of the wrong location. *Garrison*, 480 U.S. at 86. At the same time, typographical errors or other mistakes will "not invalidate a warrant if the affidavit otherwise identifies the targeted premises in sufficient detail and there is no chance that another location might be searched by mistake." *McMillian*, 786 F.3d at 640, citing *Kelly*, 772 F.3d at 1081.

We approach this illegal entry claim through the lens of qualified immunity and ask whether Officer Pearson's actions violated clearly established law. More precisely, since the district court granted summary judgment for Pearson, the question is whether the undisputed facts show that Pearson did not violate clearly established law. "The Supreme Court has

instructed that 'clearly established law should not be defined at a high level of generality.'" *Green*, 868 F.3d at 633, quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). "While a case directly on point is not required, 'the clearly established law must be particularized to the facts of the case.'" *Id.*, quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted). "[G]eneral statements of the law" can give officers "fair and clear warning." *White*, 137 S. Ct. at 552, quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997). But "in the light of pre-existing law the unlawfulness must be apparent." *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); see also *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."), quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (denying qualified immunity because handcuffing prisoner to hitching post for hours in summer sun violated clearly established law and noting that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

With that qualified immunity standard in mind, we take a closer look at Fourth Amendment law where search warrants have errors or key ambiguities. We have held that officers executing a search warrant can rely on what they know and see independent of the documents to make sure they search the correct premises, at least where the circumstances show there is no reasonable chance that the officers will search the wrong location, meaning a location other than the one the issuing magistrate authorized. E.g., *McMillian*, 786 F.3d at 640; *Kelly*, 772 F.3d at 1081; *United States v. Johnson*, 26 F.3d 669, 688 n.14,

692 (7th Cir. 1994). As *McMillian* makes clear, other circuits
have long agreed. See, e.g., *United States v. Gahagan*, 865 F.2d
1490, 1497–98 (6th Cir. 1989) (collecting cases and affirming
denial of motion to suppress); *United States v. Garza*, 980 F.2d
546, 552 (9th Cir. 1992); *United States v. Burke*, 784 F.2d 1090,
1092–93 (11th Cir. 1986) (reversing grant of motion to sup-
press; despite mistakes in address in warrant, executing offic-
ers knew enough to know which premises should be
searched); *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir.
1985) (affirming denial of motion to suppress; despite mis-
taken house number in warrant, executing officers could rely
on their knowledge to search correct premises).

The plaintiffs rely heavily on *Jones v. Wilhelm*, where we
reversed a grant of qualified immunity for an officer who ex-
ecuted an ambiguous warrant despite knowing that its de-
scription of the place to be searched described two different
apartments. 425 F.3d at 462–63 (officer knew, based on prior
surveillance, that building contained two staircases on oppo-
site sides of building, rendering description of the "upstairs
apartment on the right" ambiguous). We wrote in *Jones* that
the Fourth Amendment prohibited the officer "from applying
his earlier surveillance and subsequent deductions to resolve
the warrant's ambiguity rather than presenting those obser-
vations to a magistrate for determination." *Id*. at 463.

Our opinion in *Jones* recounted the police mistakes in that
case. One officer received a tip from an informant that a
named person in a second-floor apartment was manufactur-
ing methamphetamine. That officer obtained a warrant to
search not the named person's apartment but "the upstairs
apartment on the right." He then gave that warrant to another
officer who had been watching pedestrian traffic to the second

floor of the building. That officer, defendant Wilhelm in the case, did not go back to the issuing court (and the officer who had developed the probable cause information) to clear up the ambiguity before carrying out the search. Instead, he seems to have made his best guess about whether "the upstairs apartment on the right" was to be chosen from the viewpoint of the front door or the rear door. He chose wrongly and searched the apartment that had not been the subject of the informant's tip. 425 F.3d at 463–64.

Search first, check later, is not a sound policing strategy. *Jones* teaches that officers need to read the warrant before executing it, and they should call a judge if there is a discrepancy between the affidavit and the warrant. See, e.g., *McMillian*, 786 F.3d at 634 (officer on scene called judge after noticing error in address listed on warrant and affidavit). If they do not, they risk both personal civil liability and suppression of evidence in any criminal prosecution.

This case, however, is different from *Jones* in a critical way. Unlike the officer in *Jones*, who knew there were two apartments, knew that the warrant was ambiguous, and essentially took his best guess about which one to search, Officer Pearson testified that when he applied for the warrant he did not know there was an apartment 1B in the building. He also testified that the omission of "A" from the warrant was a clerical omission. Pearson used his knowledge of the case, including information from his source, to search the correct apartment, the one for which he had probable cause.

So Officer Pearson relies on the line of cases cited above that allow executing officers to rely on what they know to make sure they search the correct locations, despite errors or ambiguities in search warrants. The critical question for this

case is whether it was proper to resolve Pearson's defense in his favor *on summary judgment*. In civil litigation about searches that turned out to involve mistakes or ambiguities in warrants, there can be plenty of room for material factual disputes about what the executing officers actually knew and did. Parties and courts can reasonably question the credibility of officers' after-the-fact attempts to explain away their mistakes. Such cases may well present factual issues that require a full trial to resolve.

In this case, however, summary judgment was justified. Officer Pearson has offered undisputed evidence, in the form of reliable, contemporaneous documents, confirming that the correct target apartment—the one he intended to search and had probable cause to search—was apartment 1A. The LEADS report (dated the day before the warrant) and the deconfliction submission (dated the same day the warrant was executed) both listed apartment "1A" as the target of the search. Those documents remove reasonable grounds for disputing Pearson's claim that he used his knowledge to ensure that he searched the intended location.

This contemporaneous evidence distinguishes this case from others where we held that officers could not have concluded that a plaintiff's apartment was the appropriate target of the search warrant. E.g., *Jacobs v. City of Chicago*, 215 F.3d 758, 767–71 (7th Cir. 2000) (reversing grant of defendant's motion to dismiss and denying qualified immunity where reasonable officer could not have concluded plaintiff's apartment was target of search and where there was "no indication that the officers were certain that plaintiffs' apartment was the proper subject of the search"; warrant was for entire building

but building actually consisted of three apartments with separate entrances).

The reliable, contemporaneous documents avoid the disputes and concerns that arise when "an executing officer is the sole source of information about the location of the premises to be searched." See *United States v. Lora-Solano*, 330 F.3d 1288, 1294 (10th Cir. 2003). The documents confirm that here there was no substantial risk of searching by mistake someplace other than the target. As in *Kelly*, that risk was further reduced by the fact that only one apartment was accessible from the rear door that Pearson entered. See *Kelly*, 772 F.3d at 1083 ("The officers limited their search to the targeted apartment and, because only one apartment was accessible from the door through which they entered the building, there was no risk that they might inadvertently have searched the wrong unit.") (footnote omitted). That distinction means that, in these limited circumstances, Officer Pearson is entitled to qualified immunity on summary judgment.

The contemporaneous documents make Pearson's qualified-immunity defense stronger than the officer's in *Jones*. They objectively indicate that Officer Pearson "did not choose to search plaintiffs' apartment at random or maintain willful ignorance of which apartment" to search, *Jones*, 425 F.3d at 470 (Flaum, J., concurring in part and dissenting in part) (internal quotation marks omitted), and in the language of the *Jones* majority, Pearson did not realize there were two apartments and try to use his observations to make his best guess about which was the correct target, see *id*. at 465–66. In this case, the documents provide contemporaneous support for Pearson's testimony that he searched the apartment to which

the source pointed and for which the issuing judge had found probable cause.

Given the case law that allows an executing officer to use his or her own knowledge to resolve ambiguities, at least where there is no chance that the wrong location might be searched by mistake, see *McMillian*, 786 F.3d at 640, citing *Kelly*, 772 F.3d at 1081, and the contemporaneous documentation that corroborates Pearson's testimony, we affirm the district court's grant of summary judgment. Plaintiffs have not identified a precedent that should have alerted Officer Pearson that he could not proceed to search the apartment that he knew, beyond reasonable dispute, was the intended target. See, e.g., *Abbott v. Sangamon County*, 705 F.3d 706, 723–24 (7th Cir. 2013), citing *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). On that ground, we affirm summary judgment for Pearson on the entry claims based on qualified immunity.

B. *False Arrest Claims*

Plaintiffs base their false arrest claims on two theories. Tracy, Terrance, and Micheala Jones claim that they were detained while the police were executing an invalid search warrant. Their claims fail for the same reasons Pearson is entitled to qualified immunity on the unlawful entry claim, which was also based on the challenge to the validity of the search warrant. When police are executing a search warrant, the Fourth Amendment does not forbid them from detaining the occupants of the premises during the search. See *Muehler v. Mena*, 544 U.S. 93, 98–100 (2005) (vacating and remanding denial of qualified immunity), citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

Muhammad's claim is different. He was actually arrested and taken to the police station after the search was completed. He was released after fifteen minutes.

"Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Stokes v. Board of Education of City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010), citing *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (affirming summary judgment for defendant police officer). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense.'" *Id.*, quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (reversing summary judgment for arresting officer).

The probable-cause standard is objective and "relies on the common-sense judgment of the officers based on the totality of the circumstances." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010), quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). Probable cause "deals with probabilities and depends on the totality of the circumstances." *Wesby*, 138 S. Ct. at 586, quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Probable cause "is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules,'" *id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.*, quoting *Gates*, 462 U.S. at 243, n.13.

The district court granted summary judgment on the theory that Pearson had probable cause to arrest Muhammad for

possessing ammunition without a firearm owner's identification card, a violation of 430 ILCS 65/2(a)(2). That was incorrect, at least on a motion for summary judgment. Plaintiffs designated evidence that creates a genuine fact issue as to whether the police planted the ammunition. Pearson testified that the officers found bullets in Micheala's bedroom, but plaintiffs filed affidavits testifying that they did not own, possess, or have any personal knowledge of the ammunition the officers claim to have found in the apartment. That conflicting evidence presents a factual dispute that cannot be resolved on a motion for summary judgment.

Nevertheless, Officer Pearson had arguable probable cause to arrest Muhammad for the drug offense associated with the source's tip. An arrest is constitutional if it is made with probable cause for an offense, even if the arresting officer's stated or subjective reason for the arrest was for a different offense. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Qualified immunity is available if there is "arguable probable cause" for the arrest. See *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991) (reversing denial of qualified immunity); *Humphrey v. Taszak*, 148 F.3d 719, 725 (7th Cir. 1998) (same).

Officer Pearson had arguable probable cause to arrest Muhammad for possessing cocaine with intent to deliver, a violation of 720 ILCS 570/401, even though he turned out to be the wrong person. The undisputed facts show the following. Before entering apartment 1A, Pearson had probable cause to believe that a black male named Jamison Carr had been selling drugs from the apartment, that the man had a firearm he kept visible for drug deals, and that the man in question had a pregnant girlfriend. (The detail about the pregnant girlfriend is from Pearson's deposition, not the complaint for the

search warrant, but we see no basis for a genuine dispute about the point.) Upon entering the apartment, Pearson encountered in the bedroom a black male with a pregnant girlfriend. That man denied that his nickname was "Moe Moe" and denied that he was Carr, but he did not have identification to prove who he was or where he lived. Muhammad was a few years younger and about three inches shorter than Carr. While on the scene in the apartment, Pearson thought Muhammad did not look like the picture of Carr that he had, but testified that he "wasn't sure."

This information was not enough to convict Muhammad, of course, but a reasonable officer in Pearson's situation could have found that he had probable cause to arrest Muhammad, at least long enough to figure out definitively whether he was the right person or not. Under these circumstances, especially where Muhammad had no identification with him, a reasonable officer could have suspected that Muhammad might be lying about his identity. See generally *Wesby*, 138 S. Ct. at 587 (reasonable for officers investigating unlawful entry to infer partygoers lied because they claimed to be attending a bachelor party but could not identify the bachelor or who had invited them), citing *Devenpeck*, 543 U.S. at 149, 155–56; see also *Hill v. California*, 401 U.S. 797, 803 (1971) ("aliases and false identifications are not uncommon"). That uncertainty about Muhammad's identity points toward qualified immunity.

A reasonable officer can have probable cause even if she turns out to be mistaken, *Stokes*, 599 F.3d at 622, citing *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008), and *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998), and even if a witness misidentifies the target, *Gramenos*, 797 F.2d at 439 ("Probable cause does not depend on the witness turning out to have

been right; it's what the police know, not whether they know the truth, that matters."). Discrepancies between a witness's description and an officer's observation of the suspect are not unusual and do not automatically negate probable cause. See *Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520, 524 (7th Cir. 2001) (officers had probable cause to arrest man who did not exactly match witnesses' description but "bore a fair resemblance"). The Fourth Amendment "demands reasonableness, not perfection." *Id.* at 525.

Plaintiffs point out that Officer Pearson based Muhammad's arrest on some facts about the informant's tip that do not appear in the affidavit for the search warrant. Affidavits for warrants are not required to include all facts known to the officer, and the focus of the affidavit was the search, not the arrest of Carr. Muhammad has not presented a genuine issue of material fact disputing Pearson's deposition testimony about the informant's information about the pregnant girlfriend or Pearson's uncertainty about Muhammad's identity and residence. Accordingly, Officer Pearson had at least arguable probable cause to arrest Muhammad and is entitled to qualified immunity for his arrest.

The judgment of the district court is

AFFIRMED.